[No. A017402. First Dist., Div. Three. Apr. 27, 1987.]

DONALD R. WYLIE et al., Plaintiffs and Appellants, v.
JOSEPH J. GRESCH et al., Defendants and Respondents.

**COUNSEL**

Scott O'Brien and Steven Kroff for Plaintiffs and Appellants.

Alfred B. Britton, Jr., and Campbell, Warburton, Britton, Fitzsimmons & Smith for Defendants and Respondents.

**OPINION**

**BARRY-DEAL, J.**—We hold that a landlord has no duty to warn a prospective tenant of the presence of a vicious dog in the neighborhood.

The Wylies, parents and minor children, appeal from a judgment of dismissal of their action against their landlords, the Gresches, for damages resulting from an attack on one of the Wylie children by the vicious dog owned by neighbors living next door to the rented premises. In their complaint the Wylies also allege various causes of action against their neighbors, who were also tenants, and against the owner of their neighbors' premises; these defendants are not parties to the appeal. The Wylies maintain that the trial court erred in sustaining, without leave to amend, a demurrer to the causes of action against their own landlords. We affirm the judgment.

■ The function of a demurrer is to test the sufficiency of plaintiffs' pleading by raising questions of law. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; see 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 894, p. 333.) Solely for that purpose, a demurrer admits all properly pleaded material facts, but it does not admit conclusions of law. (5 Witkin, Cal. Procedure, Pleading, *supra,* at § 898, p. 338.) Thus, our only concern in this case is whether plaintiffs have stated a cause of action against their landlords for violation of a duty to protect or to warn the Wylies, as prospective tenants, against the potential harm from the vicious dog owned by the next-door neighbors.

■ Whether the trial court abused its discretion in refusing to allow amendment to the complaint hinges on whether it was "a reasonable possibility" for plaintiffs to cure any defect by amendment. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal. 3d 864, 876 [97 Cal.Rptr. 849, 489 P.2d 1113]; 5 Witkin, Cal. Procedure, Pleading, *supra,* at § 945, p. 379.) Therefore, we include in brackets facts argued to or included in the record before the trial court which presumably could have been amended into the complaint. (See *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 432, fn. 3, 433 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R. 3d 1166] [hereafter cited as *Tarasoff*].)

*The Complaint*

The third cause of action reveals the following facts. Defendants Joseph Gresch and Ann Gresch owned residential property at 85 Essendon Street in San Jose. At the time of the incident in question, October 19, 1981, they owned, managed, operated, maintained, and controlled the premises. [Approximately two months prior to that date, plaintiffs Donald Wylie and

Linda Wylie, husband and wife, had leased the premises from the Gresches and had moved in with their three minor children.] The minor children of the Wylies were: Teresa [age 12], the dog bite victim; Sharon [age 14]; and Helen [age 17], who were also plaintiffs. [The Gresches, as landlords, had a special relationship, landlord-tenant, with each of the plaintiffs and owed them a duty of care.]

Defendants Michael Buzzell and Tammy Buzzell lived next door at 83 Essendon Street, which they rented from defendant Richard Houston, who owned and managed the property. The Buzzells owned a pit bull dog,[1] which "had attempted to attack persons, had attacked other dogs and animals in the neighborhood, and had damaged property and otherwise shown vicious propensities." [On one occasion the dog had broken through a fence and chased a neighbor into her house. The dog "had virtually run rampant throughout the neighborhood."]

[Before appellants moved in, the dog had broken through the fence which separated the backyards of the two properties. The fence separating 83 and 85 Essendon had been damaged by this incident, and the Gresches had arranged for its repair prior to the Wylies' renting the premises.][2] Thus, the Gresches "had actual [and constructive] knowledge of the [dog's] vicious propensities . . . ." Nevertheless, they "failed to warn [the Wylies] of the danger of said dog, and of its vicious propensities and failed to file a formal complaint and take other available measures to have the Santa Clara County Animal Control Division, or other appropriate governmental entities, cause the removal of said dog from . . . 83 Essendon Street . . . ."[3]

---

[1]"Pit bull" is another name for the pit bullterrier or bullterrier (Webster's New Internat. Dict. (3d ed. 1970) p. 1724), which is defined as "a short-haired terrier of a breed originated in England by crossing the bulldog with terriers to develop a dog of speed, hardihood, and powerful bite for use in dog fights . . . ." (*Id.,* at p. 295.)

In their complaint, appellants allege that the Buzzells owned a black pit bull dog named "Bud," which is the dog they allege attacked Teresa. In their briefs, they allege that the Buzzells owned two pit bulls, one brown and one black, both vicious.

[2]In their opening brief appellants state that before, during, and after execution of the lease agreement, "[t]he fence . . . bore evidence of ripping, tearing and chewing and was repaired on several occasions by nailing more boards on top of the holes and weak points."

[3]On appeal, the Wylies have abandoned their claim that respondents had a duty under Civil Code section 3342.5, subdivision (b), to have the dog removed. That subdivision provides: "(b) Whenever a dog has bitten a human being on at least two separate occasions, any person, the district attorney, or city attorney may bring an action in the municipal court against the owner of the animal to determine whether conditions of the treatment or confinement of the dog or other circumstances existing at the time of the bites have been changed so as to remove the danger to other persons presented by such animal. This action shall be brought in the county where a bite occurred. The court, after hearing, may make any order it deems appropriate to prevent the recurrence of such an incident, including, but not limited to, the removal of the animal from the area or its destruction if necessary."

On the day in question, Teresa Wylie was "at or near her residence,"[4] and the dog was "in the possession of" defendants Buzzell. [The dog "came onto the property at least initially on a leash, but the dog broke off the leash."] Michael Buzzell "invited and permitted" Teresa Wylie to pet the dog. The dog then bit off the child's ear and inflicted other severe injuries.

The sixth and eighth causes of action allege that Teresa Wylie's mother and sisters suffered injuries as a result of witnessing the attack, and Donald Wylie suffered loss of consortium with his wife, Linda.

*Discussion*

■ The elements of a cause of action for negligence are commonly stated as (1) a legal duty to use due care; (2) a breach of that duty; (3) a reasonably close causal connection between that breach and the resulting injury; and (4) actual loss or damage. (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 30, pp. 164-165 [hereafter cited as Prosser & Keeton]; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 488, p. 2749.)

The principal question here focuses on the first element, that of duty. (See generally, Comment, *The Death of Palsgraf: A Comment on the Current Status of the Duty Concept in California* (1979) 16 San Diego L.Rev. 793.) ■ Whether a legal duty exists in a given case is primarily a question of law. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].) ■ In the typical negligence action, a determination that there is no "duty" giving rise to liability is essentially a shorthand way of expressing the conclusion that the weight of public policy warrants a departure from Civil Code section 1714, subdivision (a), which broadly imposes liability on "[e]very one ... for an injury occasioned to another by his [or her] want of ordinary care or skill in the management of his [or her] property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself [or herself]. ..." (See *Tarasoff, supra,* 17 Cal.3d at p. 434; *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 111-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R. 3d 496].) This weight of public policy is measured by balancing these major considerations: the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct,

---

[4]Appellants in their opening brief state that Teresa was standing on the driveway of appellants' residence when bitten. At the hearing on the demurrer, respondents' counsel asserted that the incident occurred on the sidewalk, which was city property, to which appellants' counsel replied that the court had to rely on the allegation in the complaint that "the bite occurred on the premises ...." Because of the ambiguity relating to the location of the occurrence, we have set out the location as alleged in the complaint.

the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (*Rowland, supra,* at pp. 112-113.) Appellants argue that a "duty" exists in light of these considerations.

Formerly, the duty, and resulting liability, of landlords out of possession was quite limited. They had "no general duty to keep the premises in safe condition after transfer of possession . . . [and were] ordinarily not liable for injuries to a tenant or [the tenant's] invitees, or to strangers, resulting from the defective condition of the premises, even though by the exercise of reasonable diligence [they] might have discovered the defects. [Citations.]" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 453, pp. 2135-2136; Prosser & Keeton, *supra,* at § 63, p. 436.) There were a number of exceptions to this general rule which covered cases such as those in which the landlord had knowledge of a latent defect and failed to warn the tenant, or where the landlord retained control over common areas and failed to keep them safe. (3 Witkin, Summary of Cal. Law, Real Property, *supra,* at §§ 456, 460, pp. 2139, 2143-2144.) This latter exception has been extended to impose a duty on landlords to protect tenants from criminal acts of third persons under certain circumstances. (See Prosser & Keeton, *supra,* at § 63, p. 442.)

For example, in *Kwaitkowski* v. *Superior Trading Co.* (1981) 123 Cal.App.3d 324 [176 Cal.Rptr. 494], plaintiff was assaulted and raped by a nontenant in the dimly lit lobby of her apartment building. The front door lock was defective, and the building was in a high crime area. The landlord was aware of the defective lock and of the intrusions of nontenants into the building. The landlord also knew that a similar assault had occurred in a common area of the building two months previously. (*Id.,* at p. 326.) The court found, consistent with the *Rowland* rule, that, under the circumstances, the landlord could foresee that similar assaults would occur. (*Id.,* at pp. 328-329.)

In *Penner* v. *Falk* (1984) 153 Cal.App.3d 858 [200 Cal.Rptr. 661], plaintiff tenant was assaulted by two nontenants in a common hallway of his apartment building. (*Id.,* at pp. 860-861.) The Court of Appeal reversed the decision of the trial court which had sustained defendant's demurrer, because the court found that the landlord knew of previous crimes in the building and that the landlord failed to correct known defective conditions which permitted free entry into the building. (*Id.,* at pp. 866-867.)

This extension of duty is not unlimited, however. *Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal. App.3d 538 [134 Cal.Rptr. 29], held

that a landlord was not liable for harm caused by a gunfight in the laundry room of an apartment building, where the defendant had no reason to anticipate the sudden occurrence. (*Id.,* at pp. 541-542.) Similarly, a landlord is not liable for damage caused to a tenant raped in her apartment merely because the landlord has knowledge of crime in the " 'general area.' " (*7735 Hollywood Blvd. Venture* v. *Superior Court* (1981) 116 Cal.App.3d 901, 903-905 [172 Cal.Rptr. 528]; see generally, 3 Witkin, Summary of Cal. Law (8th ed. 1984 supp.) Real Property, § 457C, pp. 283-284; 4 Witkin, Summary of Cal. Law (8th ed. 1984 supp.) Torts, § 596A, pp. 380-382.)

The limitation in these cases appears to be based not upon the particular knowledge attributable to the landlord (e.g., prior crimes), but upon the foreseeability factor in general. Under the decision in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653], holding a hospital liable for damages resulting from an assault on a doctor in a parking lot which the hospital owned, maintained, and controlled, knowledge of previous crimes is no longer a condition precedent to landowner liability, because foreseeability is now viewed as "but one factor to be weighed in determining whether a landowner owes a duty in a particular case." (*Id.,* at p. 125.) " '[W]hat is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.' [Citation.]" (*Id.,* at p. 129, quoting *Bigbee* v. *Pacific Tel. & Tel. Co.* (1983) 34 Cal.3d 49, 57-58 [192 Cal.Rptr. 857, 665 P.2d 947] [telephone company liable for negligent placement of phone booth hit by drunk driver].)[5]

Although the defendant in *Rowland* v. *Christian, supra,* 69 Cal.2d 108, was an occupier of land, the holding in that case regarding the statutory duty of due care has been extended and now applies to owners out of possession. (*Brennan* v. *Cockrell Investments, Inc.* (1973) 35 Cal.App.3d 796, 800 [111 Cal.Rptr. 122];[6] accord *Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 467 [213

---

[5]Although it did not involve a landlord-tenant situation, *Isaacs* is instructive on the relative importance of foreseeability in this and other cases. We note that while *Rowland* eliminated rigid adherence to classifications of duty based on status, "plaintiff's status is relevant under certain circumstances to the question of liability. [Citation.]" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 808, fn. 5 [205 Cal.Rptr. 842, 685 P.2d 1193] [college liable for failure to warn student of danger of reasonably foreseeable assault on campus], citing *Beauchamp* v. *Los Gatos Golf Course* (1969) 273 Cal.App.2d 20, 25 [77 Cal.Rptr. 914].)

[6]The *Brennan* court said: "The trend in other jurisdictions is to follow the lead set by California in applying ordinary rules of negligence to tort cases involving owners and occupiers of land. [Citations.] If this trend continues, questions of possession and control, answers to which have been prerequisite to even a consideration of the negligence of an owner or occupier of land, will everywhere be relevant only as they bear on such basic tort issues as the foreseeability and unreasonableness of the particular risk of harm. The direction the law is now taking clearly is toward ' "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." ' [Citations.]" (*Brennan* v. *Cockrell Investments, Inc., supra,* 35 Cal.App.3d at pp. 801- 802.)

Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R. 4th 601]; see 3 Witkin, Summary of Cal. Law (8th ed. 1984 supp.) Real Property, *supra*, § 453A, p. 279 et seq.) Thus the cases following *Rowland* and applying Civil Code section 1714 have greatly expanded the area of landlord liability. (See generally, *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490, 519, 521-524 [229 Cal.Rptr. 456, 723 P.2d 573] (conc. and dis. opn. of Mosk, J.).) Now a landlord who leases·dwellings may be liable for dangerous latent conditions on the land of which the landlord is unaware, either because of a duty to inspect for them or based upon strict liability for latent defects. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d at pp. 464, 469.)

A landlord may also be held liable for misrepresentation. In *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App. 3d 798 [142 Cal.Rptr. 487], a tenant who was raped in her apartment sued her landlords on theories of negligence and deceit. The landlords knew that several rapes had been committed in the complex by the same suspect. Upon renting the apartment, the landlords not only failed to advise the tenant of the crimes, but they assured her that the premises were safe and were patrolled at all times. The tenant relied on these statements when she rented the apartment. (*Id.,* at pp. 801-802.)

Division Four of this court held that the tenant had stated causes of action for negligence and for deceit. The negligence cause was stated in alleging that (1) the landlords had failed to provide adequate security against the same harm that had been repeatedly inflicted on other tenants, and (2) in failing to apprise her of the danger. The fact that the assault occurred in her apartment did not remove the first theory of liability for negligence, because "[f]ailure to take reasonable precautions to safeguard the common areas under [the landlords'] control could have contributed substantially, as alleged, to appellant's injuries. [Citation.] Also [as to the second basis], [the landlords'] liability for failure to warn is not founded upon their control over the common areas but upon their position of superior knowledge and upon their alleged misrepresentations." (*Id.,* at p. 803.)

Thus, although historically a landlord out of possession had limited responsibility for the rented premises, cases subsequent to *Rowland* have expanded the duty of such a landlord to ensure the safety of the premises. No case that we have found, however, imposes a duty on a landlord to protect against dangerous conditions off the premises (that is, in the neighborhood), or against dangerous persons (or animals) over which the landlord has no control, which come onto the property in a location or manner over which the owner has no control.[7] In *Mark* v. *Pacific Gas & Electric Co.* (1972) 7

---

[7] *O'Hara* v. *Western Seven Trees Corp., supra,* 75 Cal.App. 3d 798, does not compel a different conclusion. For that decision to be read as one involving a simple "failure to warn" is to read too much into it, and to leave too much out. The crucial fact there was the misrepresentation coupled with the failure to warn of a specific set of similar crimes which had been perpetrated over a period of time and which were alleged to involve access through a common area over which the landlords maintained control.

Cal.3d 170, 175, 179 [101 Cal.Rptr. 908, 496 P.2d 1276], for example, landlords who owned and controlled an apartment were properly granted a nonsuit because they had no ownership and control over a streetlight which electrocuted a tenant who stood on the fire escape while attempting to take out a glaring light bulb. And in *Preston* v. *Goldman* (1986) 42 Cal.3d 108, 110-111, 126 [227 Cal.Rptr. 817, 720 P.2d 476], a former owner was not liable for injuries suffered by a child who nearly drowned in a pond, a patent defect created by the former owner, because possession and control of the premises had ended.

Here there is no allegation that the landlords negligently maintained[8] their property or that there was a defect on the premises that was a cause of the injuries. *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741, 81 A.L.R. 3d 628], upon which the Wylies rely, is distinguishable from this case. There, the court pointed out that, while traditionally landlords out of possession had been insulated from liability in many cases, modern law created exceptions to the nonliability where the landlord retains control over his or her own premises and therefore the right to obviate the condition and prevent injury. (*Id.,* at p. 511.) The court held that the landlord owed a duty of care to a tenant's invitee to prevent injury from a vicious dog kept by the tenant on the leased premises where the landlord had actual knowledge of the presence of the animal and the right to control the premises by removing the tenant and retaking possession of the premises. (*Id.,* at p. 512.)

Here, by contrast, the dog was kept by strangers to the landlords on premises over which the landlords had no control. Therefore, the complaint alleged no facts which would give rise to liability under Civil Code section 1714 or the cases construing it. As stated by the trial court, ". . . there is no allegation that Defendants Gresch could have foreseen or prevented, by any maintenance of their property, the injury here suffered by [the] minor child."

■ Aside from the statutory duty of care imposed by Civil Code section 1714, some situations give rise to a common law duty affirmatively to disclose a danger created by a third person. (See 4 Witkin, Summary of Cal. Law, Torts, *supra,* at §§ 488, 554-555, 615, pp. 2750, 2821-2822, 2895-2896; 3 Witkin, Summary of Cal. Law, Real Property, *supra,* at §§ 456, 457, pp. 2139-2141.) Appellants, however, have failed to establish that the Gresches violated the common law duty to warn.

---

[8]Paragraph 5 of the third cause of action of the complaint alleged that the landlords herein "negligently and carelessly failed to operate, manage, maintain, and control the said premises . . . so as to remove the danger of said dog . . . ," but, as noted above, they have abandoned their claim that respondents had a duty to have the dog removed. (See fn. 3, *ante.*) We do not read the complaint as alleging negligent maintenance of the property in any other respect.

"[W]hen the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim." (*Tarasoff, supra,* 17 Cal.3d at p. 435; see Rest.2d Torts, §§ 314, 314A.) Prosser and Keeton explain the rule in this way: "The general duty which arises in many relations to take reasonable precautions for the safety of others may include the obligation to exercise control over the conduct of third persons." (Prosser & Keeton, *supra,* at § 56, p. 383, fn. omitted; see Rest.2d Torts, § 315.)[9] This is followed with a series of examples which include disputes between carrier-passenger, employer-employee, jailer-prisoner, hospital-patient, school-pupil, and landlord-tenant. (Prosser & Keeton, *supra,* at § 56, p. 383.) The fact that the previous edition of this standard text did not include landlord-tenant in the special relationship category demonstrates the recent trend apparent in the common law of this country. (See Prosser, The Law of Torts (4th ed. 1971) § 56, p. 349.)

Although disputes between landlord and tenant (or lessor and lessee) appear to be on the rise, we have found no published decision in any jurisdiction which has directly confronted the question at bench. Nor does it even seem settled in this jurisdiction that the relationship between two such parties is of the "special" kind giving rise to a duty to warn of conduct of third persons. Nevertheless, a trend away from the traditional application of the doctrine of caveat emptor to lessees is apparent, so that Prosser and Keeton report, "Modern ideas of social policy have given rise to a number of exceptions to these general rules of nonliability of the lessor, which to a large extent swallow up the general no-duty rule." (Prosser & Keeton, *supra,* at § 63, p. 435.)

It is instructive to examine the leading decisions concerning special relationships and the duty to warn. In *Tarasoff,* the Supreme Court found that a special relationship existed both between a psychotherapist and patient and the therapist and a known identifiable potential victim of the patient, such that a warning of danger should have been given. (*Tarasoff, supra,* 17 Cal.3d 425, *passim.*) In *Johnson* v. *State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], the California Youth Authority (CYA) placed a juvenile with known homicidal tendencies in a foster home but gave no warnings of the danger. The court found that the state had a duty to warn the foster parents whom it placed in danger of the foreseeable peril created

---

[9]The Restatement Second of Torts section 315 provides: "There is no duty so to control the conduct of a third person as to prevent him [or her] from causing physical harm to another unless [¶] (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or [¶] (b) a special relation exists between the actor and the other which gives to the other a right to protection."

by the CYA's acts. (*Id.,* at pp. 784-786.) Similarly, in *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], a highway patrol officer offered assistance to stranded motorists and protected them with his flashing lights. He then abandoned the scene without warning, and they were injured when one of their vehicles was sideswiped by a passing car. (*Id.,* at pp. 776-777.) The court found a special relationship and a duty to protect the motorists. (*Id.,* at p. 780; see Rest.2d Torts, § 324; but see Gov. Code, § 820.25.) In *Johnson* and *Mann* a special relationship was established by defendants' placing plaintiffs in peril, which required the defendants to warn the particular plaintiffs of danger or to protect them from negligence or intentional acts of third persons. (See *Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 207-208 [185 Cal.Rptr. 252, 649 P.2d 894].)

*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R. 4th 701] provides an example of an absence of duty to warn. There, the defendant county released to the custody of his mother a dangerous juvenile who had indicated he would kill some child in the neighborhood. Within 24 hours he did in fact kill plaintiffs' child. (*Id.,* at p. 746.) Although the county had a special relationship with the juvenile, the Supreme Court found that it had no duty to warn plaintiffs, the police, the mother of the juvenile, or other local parents, both because it had no special relationship with them, and because it did not "knowingly place the specific [victim] into a foreseeably dangerous position." (*Id.,* at p. 751.)

Quoting *Tarasoff,* the *Thompson* court noted that a special relationship " '*may* support affirmative duties for the benefit of third persons.' [Citation.]" (*Id.,* at p. 752, italics added by the *Thompson* court.) But the court refused to find the duty to warn where there had been "*nonspecific threats of harm directed at nonspecific victims.*" (*Id.,* at p. 754, original italics.)

Similarly, in *Davidson* v. *City of Westminster, supra,* 32 Cal.3d 197, the court found no special relationship between police officers who had a laundromat under surveillance and a female patron who was a potential victim of a man who had previously stabbed women in similar circumstances there. (*Id.,* at pp. 200-201.) The court stressed the absence of two aspects, at least one of which was found in cases other than *Tarasoff* where a duty to warn was imposed: creation of the danger by the defendant, and reliance by the victim on the defendant. (*Id.,* at p. 208.)

The *Davidson* court posited that requiring the police to warn the crime victim would have to be premised "on the theory that she was a potential victim of a potential assailant, necessarily imply[ing] a general duty to warn other potential victims in the vicinity. (See *Thompson* v. *County of Alameda,*

*supra,* 27 Cal.3d at p. 758.) While under some circumstances the police may conclude that such a course of conduct is prudent and necessary, our past decisions teach that it is inappropriate to impose such a duty—which may paralyze a neighborhood—under pain of tort liability. [Citation.]" (*Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 208-209.)

Here there is no indication in the pleadings that the Gresches created a dangerous situation. Nor is there any reason to believe that the Wylies relied on the landlords to warn them of any possible danger. This fact distinguishes the case at bench from *O'Hara* v. *Western Seven Trees Corp., supra,* 75 Cal. App.3d 798. A landlord is not an insurer of a tenant's safety, even from dangers which come onto the land. (*7735 Hollywood Blvd. Venture* v. *Superior Court, supra,* 116 Cal.App.3d 901, 905; and see, e.g., *Tarle* v. *Park Drive Realty* (1941) 308 Mass. 550 [33 N.E.2d 266] [tenant attacked by rats in garbage area; landlord not insurer against their presence, having no control over where they came from]; *American Marine Upholstery Co.* v. *Minsky* (Tex. Civ.App. 1968) 433 S. W.2d 717 [no duty to volunteer information that nearby creek periodically flooded; no deceit where information not suppressed].)

Although it may be that a special relationship exists between landlord and tenant, it would be unreasonable to extend the resulting duty in the landlord beyond the duty imposed on landlords to disclose defective conditions on their leased premises; and in cases involving that type of defect the rule is universally understood to be that before a duty is found, ". . . The lessor must . . . have reason to believe that the lessee will not discover the condition, or that [the lessee] will not realize the risk. The lessor is under no duty to warn the lessee of a condition which [the lessor] reasonably believes that the lessee will discover, or of the extent of the risk involved in an obvious condition, unless [the lessor] should realize that the lessee is unlikely to appreciate it." (Rest.2d Torts, § 358, com. *b.*)

In *Hanson* v. *Luft* (1962) 58 Cal.2d 443 [24 Cal.Rptr. 681, 374 P.2d 641], for example, a five-year-old child brought suit to recover damages for injuries she suffered when her pajamas were ignited while she was standing near an open gas heater in an apartment rented by her parents from defendants. (*Id.,* at p. 444.) The Supreme Court affirmed judgment entered for defendants after the trial court sustained their demurrer without leave to amend. The court said, "It is the settled rule that while a landlord is under a duty to warn the tenant of any hidden danger or defect in the leased premises of which he [or she] has knowledge [citations], there is no duty to warn the tenant of obvious and patent defects and dangers [citations]." (*Id.,* at p. 445.) The danger in question, the court observed, "must have been as obvious to the tenant-parents of the . . . plaintiff as it was to the defendants-landlords." (*Id.,*

at p. 446.) Even though the landlords had similar previous experience with the appliance (a similar injury to a minor), responsibility for the child's safety did not shift from the parents, to whom the danger must have been apparent. (*Id.,* at pp. 446-447.)

Prosser and Keeton state: "There is of course no duty to disclose conditions which are known to the tenant, or which are so open and obvious that [the tenant] cannot reasonably be expected to fail to discover them when he [or she] takes possession, or are of a kind, such as a flight of steps, or poison ivy on a campsite, which anyone might expect to encounter upon similar premises, and therefore to look out for himself [or herself]." (Prosser & Keeton, *supra,* at § 63, p. 436, fns. omitted; cf. § 33, p. 207 [failure to disclose existence of known danger actionable where plaintiff is expected to rely on appearance of safety]; *Becker* v. *IRM Corp., supra,* 38 Cal.3d 454 [latent defect]; see also 3 Witkin, Summary of Cal. Law, Real Property, *supra,* at § 457, p. 2140.)

That is precisely the situation here. Landlords in respondents' position could reasonably expect that appellants would discover the presence of the dog for themselves, and, unfortunately, a vicious dog is a danger one might expect to encounter anywhere in our society.

Furthermore, even if there is a special relationship between landlord and tenant, it would be unreasonable to extend it beyond the basis of the relationship, the subject property. Insofar as dangers in the neighborhood are concerned, the tenant's position is no different from that of any member of the general public. Neither the tenant nor members of the public rely on a landlord to warn them of such dangers. While the law has progressed far in the direction of finding duty where there is dependence (e.g., *Mann* v. *State of California, supra,* 70 Cal. App.3d at pp. 779-780; Rest.2d Torts, § 314A), it does not require a general warning such as that urged by appellants here. (See *Bill* v. *Superior Court* (1982) 137 Cal.App.3d 1002, 1013 [187 Cal.Rptr. 625], citing *Davidson* v. *City of Westminster, supra,* 32 Cal.3d at pp. 208-209.)

In our view, creation of a requirement that landlords warn prospective tenants of dangers in the neighborhood would "produce a cacaphony [*sic*] of warnings that by reason of their sheer volume would add little to the effective protection of the public." (*Thompson* v. *County of Alameda, supra,* 27 Cal.3d at pp. 754-755.) Furthermore, such a requirement would place the landlord in the position of being a purveyor of gossip and warnings that are groundless. Public policy does not dictate that a landlord should warn a prospective tenant of every potential danger in the neighborhood. We conclude that the trial court properly sustained the demurrer.

Teresa Wylie was the victim of a tragic event, the blame for which may lie with the owners of a vicious animal who were unwilling or unable to control it, and with any of a number of other people. The law, however, does not include the Gresches among them, and we decline to stretch the limits of legal duty in order to do so.

Appellants have failed to state a cause of action.[10] The judgment is affirmed.

Scott, J., concurred.

**WHITE, P. J.,** Dissenting.—The majority first concludes that the complaint alleged no facts which would give rise to liability under Civil Code section 1714. The majority also concludes that appellants have failed to establish that respondents breached the common law duty to warn of a danger to a person from a third person or an animal or an activity when a special relationship exists between the defendant and the person who might be in danger. The basis for the majority's first conclusion is "the dog was kept by strangers to the landlord[s] on premises over which the landlord[s] had no control." (Maj. opn., p. 420.) The basis for the second conclusion of the majority is set forth on page 424 of the opinion as follows: "even if there is a special relationship between landlord and tenant, it would be unreasonable to extend it beyond the basis of the relationship, the subject property. Insofar as dangers in the neighborhood are concerned, the tenant's position is no different from that of any member of the general public. Neither the tenant nor members of the public rely on a landlord to warn them of such dangers." I disagree with both conclusions.

As noted by the majority Civil Code section 1714, subdivision (a), provides: "Every one is responsible . . . for an injury occasioned to another by his want of ordinary care or skill in the management of his property . . . ." The court, in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112-113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], stated that an exception from the fundamental principle enunciated by section 1714 should not be made unless clearly supported by public policy. A determination whether public policy requires a departure from 1714 "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of

---

[10]In their brief, appellants urge only that they should have been granted leave to amend their complaint to allege that the landlords had constructive knowledge of the vicious dog next door. We have added that proposed amendment as well as other possible amendments in brackets in our statement of facts in order to consider fully the legal theories under which appellants might state a cause of action. The court did not err in denying leave to amend the complaint.

the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved."[1] The court in *Rowland* concluded that the "proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." (*Id.,* at p. 119.) In regard to a landlord and a tenant the following has recently been said by the California Supreme Court: "[A] landlord in caring for his property must act toward his tenant as a reasonable person under all of the circumstances, including the likelihood of injury, the probable seriousness of injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect." (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 468 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R. 4th 601].) Control and possession over the alleged danger are only factors to be considered in determining negligence; they are not barriers to consideration of negligence of a landlord. (*Brennan* v. *Cockrell Investments, Inc.* (1973) 35 Cal.App.3d 796, 800-801 [111 Cal.Rptr. 122].)

In *Rowland,* the defendant was the occupier of land which she had leased and the plaintiff was the guest of the defendant. The court stated since it was viewing the matters presented on a motion for summary judgment, it must assume certain facts. Plaintiff was injured while using the bathroom fixtures. Defendant "was aware that the faucet handle was defective and dangerous, that the defect was not obvious, and that plaintiff was about to come in contact with the defective condition, and under the undisputed facts she neither remedied the condition nor warned plaintiff of it." (*Id.,* at p. 119.) The court stated that the summary judgment in the case was proper only if, after proof of such facts, a judgment would be required as a matter of law for the defendant. (*Id.,* at p. 111.) The court held that a trier of fact could reasonably conclude that a failure to warn or to repair the condition constitutes negligence. "Whether or not a guest has a right to expect that his host

---

[1]Although foreseeability is usually a question of fact for the jury, this court must consider and determine foreseeability of the appellant Teresa's injuries in order to determine whether public policy would negate any liability of respondents as a matter of law. I have determined that respondents owed appellants a duty of care and to do so required a discussion of foreseeability. The discussion of foreseeability in this dissent is limited to the issue whether appellants could state a cause of action against respondents for negligence for failure to warn appellants of the vicious propensities of the dog. I do not mean to usurp the jury's function in determining whether in fact the injuries were foreseeable after the jury had heard and considered all the evidence presented at trial.

will remedy dangerous conditions on his account, he should reasonably be entitled to rely upon a warning of the dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it."[2] (*Id.,* at p. 119.) It is clear that rule in *Rowland* applying section 1714 applies to landlord and tenant cases. (*Becker* v. *IRM Corp., supra,* 38 Cal.3d 454, 467; *Brennan* v. *Cockrell Investments Inc., supra,* 35 Cal.App.3d 796, 801.)

The majority recognizes that factors set out in *Rowland* have been analyzed to impose a duty on landlords to protect tenants from criminal acts of third persons in certain circumstances. The majority appears to limit liability to situations where the acts occurred in the common areas of the building which the landlord retained control or could have been prevented by some security measures on the property which he retained control, even though the majority recognizes that the statutory duty of due care has been extended and now applies to owners out of possession. I disagree with the majority's apparent belief that appellant in *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798 [142 Cal.Rptr. 487], could not have stated a cause of action for negligence under *Rowland* without relying upon the misrepresentations made to her. In *O'Hara,* the tenant was raped in her own apartment by a man who had raped several other tenants in the building. Respondents, the landlords and operators of the apartment complex, assured appellant, a prospective tenant, that the premises were safe and were patrolled at all times by professional guards. Respondents knew these statements were false and disclosed no information concerning the assaults. Appellant filed a complaint alleging negligence of the respondents in failing to provide adequate security and in misrepresenting the security measures in effect on the premises, in concealing information concerning a man who had raped several female tenants, and in failing to warn appellant of the danger of rape. In the second cause of action for deceit it was alleged that respondents knowingly misrepresented the safety and security of the complex with intent to induce appellant to rent an apartment.

Although the court in holding that appellant had stated a cause of action for negligence referred several times to the misrepresentations, it is clear that

---

[2]The majority states that one exception to the old rule that the landlord had no duty once possession of the property was transferred is when the landlord had knowledge of a latent defect. In the instant case appellants state that they were unaware of the viciousness of the dog. While the presence of the dog was obvious, the danger posed to appellants by the dog was not. In *Couch* v. *Pacific Gas & Elec. Co.* (1947) 80 Cal.App.2d 857 [183 P.2d 91], a landlord who had knowledge that loose uninsulated wires had been left hanging from an old heater installation was held liable for the death of the tenant's child by electrocution. The hanging wires were obvious, but the fact that they were energized was not, and thus the presence of electricity in the wire was a latent defect. Latent and patent dangers or defects are no longer the sole basis for determining liability as will be discussed later in this dissent.

the court did not consider the misrepresentations to be necessary to appellant's cause of action for negligence. The court stated: "Not only did respondents allegedly fail to provide 'adequate security,' they did not warn appellant about the suspected assailant and they actually misrepresented the security measures in force. *Even without secure premises,* knowledge of the suspect's mode of operation and a view of the composite drawings could have been useful to appellant. If she had known of the danger, she might not have rented an apartment in the complex, or she could have taken precautions based on a knowledge of the suspect's appearance and mode of operation." (*Id.,* at p. 803, italics added.)

Respondents in *O'Hara* contended that since the assault took place inside appellant's apartment, they were not subject to liability since they had no control over that area. The court rejected this argument on the ground that respondents' liability for failure to warn is not founded upon their control over the common areas, but upon their position of superior knowledge. (*Ibid.*) Foreseeability was alleged because of respondents' knowledge of the past assaults. In applying *Rowland* the court said: "This failure to act, either by warning appellant or by providing adequate security, allegedly created a risk of injury to appellant." (*Id.,* at p. 804.)

The fact that the misrepresentations were not considered by the court to be necessary to appellant's cause of action for negligence is further demonstrated by the following quote from *O'Hara*: "Respondents' possible liability is also suggested by the Restatement Second of Torts: 'An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of ... a third person which is intended to cause harm, even though such conduct is criminal.' (§ 302B.) Respondents allegedly knew of conditions making sexual assaults likely. The risk was unreasonable because respondents could have decreased the risk with a simple disclosure of information." (*Id.,* at p. 804.)

The majority in discussing a landlord's liability to tenants for criminal acts of a third person, asserts that such liability is only present when the criminal act occurred on the premises that the landlord had retained control or could have provided greater security in common areas which would affect a tenant's apartment. From the above discussion of *O'Hara,* it can be seen that liability on the landlord may be imposed when criminal acts of a third person occur in an area in which the landlord has no control (the apartment of the tenant) when the landlord had knowledge of dangers to the tenant of which he failed to warn.

Applying *O'Hara* to the instant case, it is clear that appellants could have stated a cause of action for negligence. Appellants alleged that respondents

knew of the vicious propensities of the dog and could have alleged that the dog had virtually run rampant throughout the neighborhood. Respondents contend that although the complaint alleges that the dog "had attempted to attack persons, had attacked other dogs and animals in the neighborhood, and had damaged property and otherwise shown vicious propensities ... ," they cannot be liable because there is no allegation or assertion that the dog had ever bitten anyone before. As pointed out by the majority, the court in *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112 [211 Cal.Rptr. 356, 695 P.2d 653], held it is not necessary that the particular incident has occurred before, but "what is required to be foreseeable is the general character of the event or harm ... not its precise nature or manner of occurrence.' " (*Id.,* at p. 127.)

The majority opinion relies upon *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504 [118 Cal.Rptr. 741], for the proposition that "while traditionally landlords out of possession had been insulated from liability in many cases, modern law created exceptions to the nonliability where the landlord retains control over his or her own premises and therefore the right to obviate the condition and prevent injury. (*Id.,* at p. 511.) The court held that the landlord owed a duty of care to a tenant's invitee to prevent injury from a vicious dog kept by the tenant on the leased premises where the landlord had actual knowledge of the presence of the animal and the right to control the premises by removing the tenant and retaking possession of the premises." (Maj. opn. p. 420.) The majority distinguishes *Uccello* from the instant case as follows: "Here, by contrast, the dog was kept by strangers to the landlords on premises over which the landlords had no control." Appellants based their cause of action against respondents on the failure of respondents to warn them of the viciousness of the dog (among other grounds). As noted above failure to warn is not based upon control but superior knowledge. As noted earlier the court in *Brennan* v. *Cockrell Investments, Inc., supra,* 35 Cal.App.3d 800-801, held that control and possession over the alleged danger are only factors to be considered in determining negligence; they are not barriers to consideration of negligence of a landlord.

Whether a person owes a duty of care to another person is a question of law. (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) However, foreseeability of the risk is a primary consideration in determining the element of duty. While duty is a question of law, foreseeability is a question of fact for the jury. (*Ibid.*) " 'The degree of foreseeability necessary to warrant the finding of a duty will thus vary from case to case. For example, in cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of fore-

seeability may be required.' " (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d 112, 125.) Foreseeability can be shown by evidence of prior incidents, whether similar or not, the nature, condition, and *location* of the defendant's premises. (*Id.,* at p. 129.)

A lesser degree of foreseeability is required in the instant case since the harm could have been very well avoided by a simple warning of the viciousness of the dog. Although appellants' complaint is not an example of artfully worded allegations, it must be remembered that, since the trial court sustained respondents' demurrer without leave to amend, this court is bound to consider whether appellants could have stated a cause of action if allowed to amend their complaint. The complaint does allege that respondents knew of the vicious propensities of the dog. Before the execution of the lease the dog tried to obtain access to the backyard of the premises by breaking through the fence which separated the backyards of the two properties. The majority states in footnote 2 of the opinion in "their opening brief appellants state that before, during, and after execution of the lease agreement, '[t]he fence . . . bore evidence of ripping, tearing and chewing and was repaired on several occasions by nailing more boards on top of the holes and weak points.' " Therefore appellants, if allowed to amend, might be able to allege that respondents knew that the dog had attempted on more than one occasion to gain access to the leased premises. The dog virtually ran rampant throughout the neighborhood. The dog was kept on the premises immediately adjacent to the leased premises. These facts are sufficient to state a cause of action and to allow a jury to determine whether the injury was foreseeable. It would seem at the very least that respondents should have warned appellants that the dog was attempting to gain access to the property by breaking though the fence. This warning would necessarily include the vicious propensities of the dog. As noted earlier, " 'what is required to be foreseeable is the general character of the event or harm . . . not its precise nature or manner of occurrence.' " (*Isaacs, supra,* 38 Cal.3d at p. 127.) Furthermore, these facts are sufficient to present a question of fact whether the dog might come unto the premises by means other than the fence.

The majority concludes its discussion of possible liability under Civil Code section 1714 with the following statements: "the complaint alleged no facts which would give rise to liability under Civil Code section 1714 or the cases construing it. As stated by the trial court, '. . . there is no allegation that Defendants Gresch could have foreseen or prevented, by any maintenance of their property, the injury here suffered by [the] minor child.' " As noted earlier it is not necessary that a defendant's liability under section 1714 and *Rowland* be based upon lack of maintenance to prevent the injury, but it can be based upon failure to warn of dangerous conditions. (*Rowlands* v. *Christian, supra,* 69 Cal.2d 108, 119; *O'Hara* v. *Western Seven Trees Corp.,*

*supra,* 75 Cal.App.3d 798, 803-804.) When defendants' liability is based upon a failure to warn, it is not necessary that defendants have control of the premises, since their liability is based upon superior knowledge.

The majority in its discussion of "statutory" duty of due care under Civil Code section 1714, does not discuss the duty to warn except in footnote 7 wherein the majority states, "For that decision [*O'Hara* v. *Western Seven Trees Corp., supra,* 75 Cal.App.3d 798] to be read as one involving a simple 'failure to warn' is to read too much into it, and to leave too much out." I have already discussed *O'Hara* and demonstrated that the majority has misread that case. At this point in the dissent, I do not wish to belabor the discussion of *O'Hara,* but to point out that the majority appears to assume that the statutory duty of ordinary care under Civil Code section 1714 and *Rowland* can only arise when the landlord can by some maintenance of his property over which he has control prevent a foreseeable injury. The majority appears to believe that a duty to warn is a duty established under the common law to which different criteria should be applied from the statutory duty. As set out in the first part of this dissent *Rowland* recognized that the statutory duty of care owed by an occupier to others who come unto his premises under certain circumstances can be breached by a simple failure to warn. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 119.) As noted earlier *Rowland* and section 1714 apply to landlord-tenant cases.

I do not dispute that the common law imposed a duty to warn of a danger created by a third person (or an animal) under certain circumstances, but I do dispute whether such a discussion is necessary to the instant case, since the statutory duty of care which was present includes a duty to warn. The majority appears to overlook the statutory duty to warn which is included under Civil Code section 1714 by virtue of its imposing upon the landlord or occupier of land the duty to use ordinary care in the management of his or her property. The common law duty to which the majority refers concerns relationships in addition to landlord and tenant. Since even under the common law duty to warn, appellants could have stated a cause of action if allowed to amend their complaint. I will consider the majority's discussion of this area of the law.

The fact that liability for failure to warn is not necessarily dependent upon control of the premises, or of the danger, but on superior knowledge is demonstrated by the majority's discussion of the common law duty to warn. In *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334], the California Supreme Court found that a special relationship existed both between a therapist and his patient and the victim that the patient told the therapist he was going to kill. The court found that the therapist had a duty to warn the victim. In so holding the court

stated: "As a general principle, a 'defendant owes a duty of care to all persons who are foreseeably endangered by his conduct, with respect to all risks which make the conduct unreasonably dangerous.' [Citations.] As we shall explain, however, when the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, the common law has traditionally imposed liability only if the defendant bears some special relationship to the dangerous person or to the potential victim. Since the relationship between a therapist and his patient satisfies this requirement, we need not here decide whether foreseeability alone is sufficient to create a duty to exercise reasonable care to protect a potential victim of another's conduct." (*Id.,* at pp. 434-435.) A landlord has such a special relationship with his tenant. (*Totten* v. *More Oakland Residential Housing, Inc.* (1976) 63 Cal.App.3d 538, 546 [134 Cal.Rptr. 29].)

The duty to warn the victim in *Tarasoff* was not based upon the therapist's control over his patient, but upon his knowledge of the danger to a particular person. The court did recognize that a therapist may have difficulty in attempting to predict whether a patient presents a serious danger of violence. (*Tarasoff* v. *Regents of University of California, supra,* 17 Cal.3d 425, 438.) The court then stated: "The issue in the present context, however, is not whether the patient should be incarcerated, but whether the therapist should take any steps at all to protect the threatened victim; some of the alternatives open to the therapist, such as warning the victim, will not result in the drastic consequences of depriving the patient of his liberty. Weighing the uncertain and conjectural character of the alleged damage done the patient by such a warning against the peril to the victim's life, we conclude that professional inaccuracy in predicting violence cannot negate the therapist's duty to protect the threatened victim." (*Id.,* at p. 439.)

To hold as the majority does that as a matter of law respondents are not liable for the injury to one of their tenants caused by a vicious dog which was kept on the property adjacent to the leased property of which respondents had knowledge, is a statement that public policy negates the imposition of liability. The court in *Tarasoff,* in determining whether public policy negated imposing liability upon the therapist, considered the factors set out in *Rowland* for determining whether public policy requires departure from Civil Code section 1714, even though *Tarasoff* does not concern the duty of care a person owes in the management of his or her property. Thus, whether respondents had a duty to warn appellants because of their special relationship with appellants can be considered without reference to the limitations imposed under the cases applying Civil Code section 1714, specifically the limitation the majority mentions regarding control, as the common law duty to warn in *Tarasoff* was not based upon his control of his patient.

I will now discuss the considerations set out in *Rowland* for determining whether public policy negates the imposition of liability, as they apply to the facts of the instant case. (The considerations are set out in pages 425-426 of this dissent and on pages 416-417 of the majority opinion.) It was foreseeable that Teresa would be attacked by the dog on the leased premises, given the dog's vicious propensities and the fact that the premises were adjacent to the premises where the dog was kept (as noted earlier, location may be considered in determining foreseeability), and the fact that the dog was known to roam the neighborhood. There is no question that appellant Teresa suffered injury. If respondents had warned appellants of the viciousness of the dog, appellant Teresa most likely would not have petted the dog. There is moral blame attached to respondents' failure to warn under the circumstances: respondents should not have leased a house to a family with children and said nothing about their knowledge of the vicious propensities of the dog which posed a danger to appellants. Requiring respondents to warn of dangers that they had knowledge that might cause injury to their tenants, places very little burden on respondents. I am not saying that respondents have a duty to ascertain all dangers in the neighborhood that may cause injury to tenants on the leased property, but merely must warn of known dangers. The consequences of imposing such a duty are no greater than the duty that was imposed upon the therapist in *Tarasoff* to warn a foreseeable victim or to protect said person from the conduct of his patient. (*Tarasoff, supra,* 17 Cal.3d at p. 435.) " '[C]ase law should dispel any notion that to impose on the therapists a duty to take precautions for the safety of persons threatened by a patient, where due care so requires, is in any way opposed to contemporary ground rules on the duty relationship. On the contrary, there now seems to be sufficient authority to support the conclusion that by entering into a doctor-patient relationship the therapist becomes sufficiently involved to assume some responsibility for the safety, not only of the patient himself, but also of any third person whom the doctor knows to be threatened by the patient.' " (*Id.,* at p. 437.) Insurance is readily available to landlords for property that they have leased which can include injuries to the tenants for which the landlord is liable. Consideration of all these factors demonstrate that appellants could state a cause of action against respondents in negligence for a breach of the duty respondents owed appellants, although actual liability would be determined by a jury.

In *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504, 509, footnote 2, the court states as noted above, "a pet owner often is incapable of objectively evaluating his animal's dangerous propensities. This is a factor which must be considered in deciding whether *public policy requires,* under carefully limited circumstances, *the imposition of a duty of care on someone other than the pet owner,* in this case the owner of the premises where the animal is kept, so as to prevent future harm." (Italics added.) In *Uccello* the court found that

the duty of care owed was the removal of the dog over which the landlord had control. The duty of care owed by respondents in the instant case was simply the duty to warn, since such a duty is not based upon control, but rather superior knowledge. Public policy should impose upon a landlord who leases property immediately adjacent to property where a vicious dog is kept to warn the tenants that the dog might come unto the premises so as to prevent injury to his tenants. It is unnecessary in the instant case to determine all the dangers in a neighborhood which a landlord must warn. (However, this dissent merely puts forth the position that public policy does not negate a landlord's liability for failing to warn a tenant about a dangerous animal of which he has knowledge will likely come unto the leased premises from the adjacent property.)

As appellants point out, respondents' duty to warn them of the dog arose before they took possession of the premises. Such a warning might have influenced appellants in deciding whether to lease the premises. A warning at a later time would not have been as effective since a decision whether to lease particular premises is based upon entirely different factors than the factors taken into consideration in deciding to move. Moving causes the uprooting of children which could involve new schools as well as the loss of friends. Moving also can involve considerable expense.

The majority in discussing cases involving a common law duty concludes that in order for there to be a duty to warn at least one of two aspects must be present (although not present in *Tarasoff*), "creation of the danger by the defendant, and reliance by the victim on the defendant." It could well be argued that respondents in the instant case placed appellants in a position of peril when respondents rented them the premises knowing that a vicious dog might come unto the premises. (See *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 785-786 [73 Cal.Rptr. 240, 447 P.2d 332].) Since respondents placed appellants in foreseeable peril, they owed them a duty to warn of such potential peril. (*Ibid.*) Thus, I dispute the majority's statement on page 423 of its opinion: "Here there is no indication in the pleadings that [respondents] created a dangerous situation." However, it is not necessary in this case to find that respondents placed appellants in a position of danger in order for respondents to have a common law duty to warn. The two factors that the majority states are present in cases other than *Tarasoff* were found in order to establish a special relationship between the plaintiff and the defendant. However, in the instant case it is not necessary for one of these factors to be present, because a special relationship already existed between respondents and appellants—tenant and landlord.

The majority then states there was no duty to warn appellants of the peril posed by the vicious dog because said danger was not latent. (See fn. 2, *ante.*)

The majority quotes Prosser & Keeton, The Law of Torts (5th ed. 1984) section 63, page 436, to support its position as follows: "Prosser and Keeton state: 'There is of course no duty to disclose conditions which are known to the tenant, or which are so open and obvious that [the tenant] cannot reasonably be expected to fail to discover them when he [or she] takes possession, or are of a kind, such as a flight of steps, or poison ivy on a campsite, which anyone might expect to encounter upon similar premises, and therefore to look out for himself [or herself].' " (Maj. opn., p. 424.) The majority in applying the above-quoted statement concludes: "That is precisely the situation here. Landlords in respondents' position could reasonably expect that appellants would discover the presence of the dog for themselves, and, unfortuntely, a vicious dog is a danger one might expect to encounter anywhere in our society. (*Ibid.*)[3]

The majority has in effect stated that a vicious dog is not a latent defect as a matter of law. As mentioned earlier in this dissent foreseeability is a question of fact. Whether or not a vicious dog is a latent or patent danger is of little importance to this case. *Hanson* v. *Luft* (1962) 58 Cal.2d 443, 445 [24 Cal.Rptr. 681, 374 P.2d 641] states, "It is the settled rule that while a landlord is under a duty to warn the tenant of any hidden danger or defect in the leased premises of which he has knowledge [citations], there is no duty to warn the tenant of obvious and patent defects and dangers [Citations]." However, *Rowland* v. *Christian, supra,* 69 Cal.2d 108, 112, did away with the strict line between patent and latent defects or dangers as the sole way in which to defeat liability of a landlord. "Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy." (*Ibid.*) In *Minoletti* v. *Sabini* (1972) 27 Cal.App.3d 321, 324-325 [103 Cal.Rptr. 528], the court found no public policy which would require them to reinstate the strict line between patent and latent dangers or defects.[4]

---

[3]I have already quoted from footnote 2 of *Uccello* v. *Laudenslayer, supra,* 44 Cal.App.3d 504, 509, wherein the court states "a pet owner often is incapable of objectively evaluating his animal's dangerous propensities. This is a factor which must be considered in deciding whether public policy requires, under carefully limited circumstances, the imposition of a duty of care on someone other than the pet owner, in this case the owner of the premises where the animal is kept, so as to prevent future harm." Clearly, the court in *Uccello* did not feel the vicious propensities of a dog should be considered a danger which is so obvious that a person cannot reasonably fail to discover the danger.

[4]Even when a landlord was liable only for latent dangers or defects, the question of what was a latent danger or defect and what was patent danger or defect was a question of fact for the jury. (*Merrill* v. *Buck* (1962) 58 Cal.2d 552, 558 [25 Cal.Rptr. 456, 375 P.2d 304]; *Couch* v. *Pacific Gas & Elec. Co., supra,* 80 Cal.App.2d 857, 861, 862.)

It is a jury question whether a reasonable landlord would have warned prospective tenants regarding the vicious nature of the dog even though the presence of the dog might be obvious. Even if it can be said that appellants should have known of the vicious propensities of the dog, this fact would go to comparative negligence and does not justify the sustaining of the demurrer without leave to amend.

The majority near the very end of its opinion states: "Furthermore, even if there is a special relationship between landlord and tenant, it would be unreasonable to extend it beyond the basis of the relationship, the subject property. Insofar as dangers in the neighborhood are concerned, the tenant's position is no different from that of any member of the general public. Neither the tenant nor members of the public rely on a landowner to warn them of such dangers." This statement overlooks the simple fact the subject property may be considered dangerous if a condition on the adjacent property exposes the tenants on the landlord's property to a risk of injury. (Cf. *Branzel* v. *City of Concord* (1966) 247 Cal.App.2d 68, 72-73, fn. 6 [55 Cal.Rptr. 167].)

I am of the opinion that the trial court improperly granted respondents' demurrer without leave to amend, since appellants could have amended their complaint to state a cause of action under Civil Code section 1714 and *Rowland* and the common law duty to warn. I would reverse the judgment.