[Civ. No. 11801. Second Appellate District, Division One.—June 8, 1939.]

J. R. HAYDEN, Appellant, v. PARAMOUNT PRODUC-TIONS, INC. (a Corporation), et al., Respondents.

Meserve, Mumper, Hughes & Robertson and Baldwin Robertson for Appellant.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, Kenneth K. Scott and Everard L. McMurrin, Deputies City Attorney, Joe Crider, Jr., Clarence B. Runkle and Lasher B. Gallagher, for Respondents.

WHITE, J.—This is an action by plaintiff to recover damages for personal injuries alleged to have been sustained by and through the negligence of the defendants. Upon the trial a nonsuit was granted at the close of the evidence for plaintiff and judgment entered for the defendants, from which the plaintiff appeals. The attempted appeals from the "order and orders of nonsuit, . . . granting the several motions of nonsuit on behalf of defendants" are dismissed, for the reason that the questions presented by them will be decided upon the appeal from the judgment.

The main ground upon which the motion for nonsuit was made and granted was that negligence on the part of the defendants contributing proximately to the injury sustained by plaintiff did not appear. The facts as disclosed by the evidence are: The defendant City of Los Angeles and Department of Water and Power (hereinafter designated as the city) is and for years past has been engaged in the business of supplying its inhabitants with electric energy. On November 22, 1922, the city procured a right of way for the erection and maintenance of poles, wires and necessary fixtures on and over the northerly side of certain property belonging to defendant Paramount Productions, Inc. (hereinafter referred to as Paramount). Pursuant thereto, the city, in the year 1923, erected the original electric line on and over this right of way, where it has remained continuously except for some replacement of poles. The Paramount property contains approximately twenty-six acres and is located in the city of Los Angeles. On November 15, 1935, defendant E. S. McKittrick Company, Inc. (hereinafter called McKittrick), agreed in writing to construct a general storage building for Paramount upon the aforesaid property. Construction work on the building was actually begun in the latter part of November, 1935, and in order to clear the area that the storage building was to occupy it was necessary to move the city's power poles eighteen or twenty inches farther north or nearer the property line. Pursuant to Paramount's request, the city, on December 10, 1935, replaced one of the poles, and was not again notified to make further pole changes until four months later, or in early April, 1936, at or about which time another pole was replaced. On the day of the accident one of the newly installed poles leaned somewhat to the south, the evidence showing that the base of the pole was fifteen inches north of

the north building line of the new building, and at a point approximately twenty-eight feet above the ground level of the new building the pole was approximately seven inches from the north wall of such new building. In other words, the pole leaned to the south eight inches at a point twenty-eight feet from the ground. The electric wires supported by these poles constituted a high voltage line, and the conductors or wires of said line carried voltage of 33,000 volts. On each cross-arm of the two poles with which we are here concerned there were signs reading ''High Voltage'', each of which was plainly visible.

Pursuant to an assignment of a subcontract, the structural steel of the storage building was erected by Bethlehem Steel Company, who was not a party to this litigation. Employees of the last-named company commenced the steel work on the second unit of the warehouse on Monday, April 20, 1936. The appellant, J. R. Hayden, was one of these employees. During the next four days, or until the time of his injury about 4 o'clock in the afternoon of Thursday, April 23d, appellant Hayden assisted in erecting steel from the ground up, and he observed the city's electric lines the first day he was on the job. On the aforesaid afternoon, appellant, concededly an employee of Bethlehem Steel Company, the subcontractor, was injured through contact with the city's electric power line, at which time he was engaged with fellow employees in the installation of one of a row of steel columns. These columns were raised and moved into place by a mechanical device known to the trade as a crane or ''whirly''. Briefly described, it consisted of a long steel boom mounted on a truck, with cables that ran from a drum along the boom and through sheaves or pulleys at its upper end, and then down to the object to be moved. The crane could turn a complete circle; its boom could be raised and lowered at an angle of ninety degrees; and the cables could be drawn in and extended as conditions required. At the time of the accident the crane was standing about twenty to twenty-two feet south of the north line of the building. Column number three had just been picked up from a position on the ground along the westerly side of the crane after appellant Hayden had affixed a sling or choker to the column about three feet from its upper end and had hooked the load block from the crane into this sling. The column was then raised by the crane so that it hung from

the boom in a vertical position, its lower end being about three feet above the ground. The crane was operated by an employee of Bethlehem Steel Company. The operator, by a counted-clockwise movement of the crane, caused the column to be swung or carried toward the concrete base upon which it was to be set in the north wall of the building. Continuously during this operation appellant held on to the column, his hands being placed about one foot from its lower end as he guided it toward the aforesaid base. While being thus operated by appellant's fellow employee, the boom, in its northerly and upward course, came into close proximity to or contact with the city's lowest high tension wire on the south side of the power poles, as a result of which appellant received his injuries, consisting of electric shock and burns.

It was estimated that the boom was capable of reaching a height of from forty-three feet to more than fifty feet. Regardless, however, of its precise measurement, it is obvious that the boom could and did reach as high as the overhead electric wire with which it made contact and which wire was approximately forty-five to fifty feet above the ground at the point of contact.

It is at once apparent from the foregoing facts that the proximate cause of plaintiff's injuries was not any negligence on the part of the defendants, but was primarily and proximately attributable to the negligence of appellant's employer, Bethlehem Steel Company, whose foreman set the crane in a position where it could touch or come in dangerous proximity to the high voltage wires which were in plain view and to which were attached warning signs, and whose other employee, the operator of the crane, operated it in such a manner as to bring it so close to the high voltage wires, with knowledge of both the proximity and danger of such wires, that it grounded an electric current, resulting in injury to appellant.

■ Appellant contends, however, that the respondent city was negligent in maintaining out of alignment its poles which supported the power line and in permitting them to lean in the direction of that part of the premises upon which appellant was working, as a result of which, it is contended, the power lines were sagging unreasonably and in dangerous proximity to such premises and to the crane or derrick about which appellant was working. There was no substantial evidence that the wires were sagging to a point where they were

in dangerous proximity to the premises. The wires had a safe clearance, under the circumstances here presented, of more than forty-five feet above the ground, and the city was fortified with a right of way over which it was entitled to maintain the wires. In *Simons* v. *Pacific Gas & Elec. Co.,* 64 Cal. App. 74 [220 Pac. 425], it was held not to be negligence as a matter of law for a power company to maintain its lines with leaning poles which are rigidly fixed or to string wires twenty-eight feet ten inches above the ground or to maintain its line within seven feet of the well and derrick of a rancher. In the absence of an allegation and proof that wires were maintained in violation of a rule of law or a regulation of an authorized governmental body or commission, it must be assumed that they were maintained at the required height above the ground. (*Hauser* v. *Pacific Gas & Elec. Co.,* 133 Cal. App. 222 [23 Pac. (2d) 1068].) There was no evidence to support appellant's claim that the city caused him to be and to become in contact with the high voltage electric line. Neither appellant nor the operator of the "whirly" were in the employ of the city, and the latter had no control over either. Indeed, the record is barren of any evidence that the city even had knowledge of the work appellant was doing at the time of the accident. The latter was not an invitee of the city, but if it be conceded that appellant was an invitee of the city, the latter was obliged only to keep the premises in safe condition and as heretofore noted, the evidence failed to show that the city failed to use reasonable and ordinary care in the erection and maintenance of its power lines. There was no contractual relation between the city and appellant or his employer. The work in which appellant was engaged at the time of his injury had no relation to the business of respondent city. Manifestly, the city could not reasonably be expected to anticipate that any one would project a boom or "whirly", working near its right of way, to an elevation of more than forty-five feet and contact an electric wire, thereby causing the current to ground, when, as here, the operator of the "whirly" knew of the presence of the wires and was apprised of their dangerous voltage through appropriate signs attached to the cross-bars on the poles. The proximate cause of this accident rests upon the Bethlehem Steel Company, whose employee misjudged distance and projected the end of the boom over forty-five feet in the air, causing the boom to

come in contact with or in proximity to one of the city's electric wires, thereby grounding the same, notwithstanding knowledge of the location of the wires and notice of their dangerous voltage. The law in this regard is explicitly stated in the case of *Stackpole* v. *Pacific Gas & Elec. Co.*, 181 Cal. 700 [186 Pac. 354]. As was said in *Hauser* v. *Pacific Gas & Elec Co.*, *supra*, quoting from 45 Cor. Jur. 931:

" 'A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though such injury would not have happened but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause. And if an independent negligent act or defective condition sets into operation the circumstances which result in injury because of the prior effective condition, such subsequent act or condition is the proximate cause.'

"From the complaint it appears that plaintiff knew of the dangerous character of the wires and their exact location and condition and deliberately moved a derrick into them and was injured. From the foregoing it appears the complaint and the amended complaint failed to set forth any cause of action."

See, also, *Sweatman* v. *Los Angeles Gas & Elec. Corp.*, 101 Cal. App. 318 [281 Pac. 677].

The standard of ordinary and reasonable care was attained by the city so far as its conduct is here concerned, for this means such care as a reasonably careful and prudent person, having in view the dangers to be avoided, and the likelihood of injury therefrom, would exercise, under the circumstances, in order to prevent injury. It is not required under the law that one who maintains even so dangerous an instrumentality as a highly charged electric wire shall anticipate at his peril every possible fortuitous circumstance under which some person might make a contact with such wire, resulting in injury or even death. Reasonable care, not insurance against every possible accident, is the measure of liability.

As to respondent Paramount, appellant urges negligence on the grounds that the former caused one of the poles to lean off perpendicular; that it refused to permit the city

to replace such poles prior to the happening of the accident; that Paramount failed to warn appellant of the danger of the high power lines; and finally, that Paramount neglected to make the premises safe for appellant to work upon. These claims cannot be upheld. The only evidence connecting Paramount with the leaning position of the pole was that the latter had some guy wires and wooden braces connected between a moving picture set and the pole, but one is left to surmise and conjecture to find any causal connection between the attachment of the guy wires and braces and the leaning of the pole, for the record is bereft of any evidence indicating that the attachments were responsible for the pole's leaning some twelve to fourteen inches. What we have heretofore said with reference to predicating negligence upon the leaning of the pole is applicable here. (*Simons* v. *Pacific Gas & Elec. Co., supra.*) Appellant's contention that Paramount was guilty of negligence by reason of its alleged refusal to permit the city to replace the leaning pole with a taller pole is without merit for two reasons: (1) the city had a right of way along Paramount's property which entitled it to enter thereon and to do such work as the city might deem necessary for the proper and safe maintenance of the high voltage power lines, and (2) for the reasons heretofore given in discussing this appeal as to the city, there rested upon the latter no obligation to install a taller pole, and its failure so to do was not negligence proximately contributing in any way to the injury sustained by appellant. It was not incumbent upon Paramount to warn appellant of any danger, because the high voltage wires were open to view and presented a patent danger by reason of common knowledge of the fact that power lines such as the one here in question are dangerous instrumentalities, and ordinary prudence dictates that one situated as were appellant and his fellow employees should refrain from exposing himself to the danger occasioned by contact with such wires. (*Bartuluci* v. *San Joaquin Light & Power Corp.*, 21 Cal. App. (2d) 376, 385 [69 Pac. (2d) 440]; *Stackpole* v. *Pacific Gas & Elec. Co., supra.*)

Appellant's claim that no one had told him or the operator of the crane about the slope in the wires due to the leaning of the pole is unavailing, because the evidence discloses that both of these men as well as Mr. Reeves, the foreman for appellant's employer, Bethlehem Steel Company, who

placed the crane in a dangerous position, could easily have seen the wires if only they looked. That they did not look seems incredible, in view of the fact that the foreman had warned the workmen to watch out for the wires. Appellant was working for Bethlehem Steel Company and was under the direct supervision of the foreman, Reeves. If appellant personally was not warned of the danger lurking in the wires and was entitled to such warning, the responsibility to give it rested upon appellant's superior, Reeves, who admittedly had such knowledge, and not upon Paramount. Respondent Paramount, having no control or right to control the high power lines in any way because of the city's ownership and maintenance thereof, and having exercised ordinary care in its conduct, thereby discharged its obligation as an invitor to the appellant invitee. (19 Cal. Jur. 607.)

 Coming now to a consideration of this appeal so far as respondent McKittrick Company is concerned, we find that the latter was a general contractor performing certain construction work for respondent Paramount. Bethlehem Steel Company, the employer of appellant and of all workmen in charge of the crane or ''whirly'', was an independent contractor. Each was there under contract to perform separate and distinct work on the building, independent of the other. As to the owner, respondent Paramount, they were each invitees, but as to each other they were strangers, between whom there was no privity of contract. Therefore they owed to the employees of each other the same duty of exercising ordinary care for their safety during the progress of the work as they owed the public generally. In *Hall* v. *Barber Door Co.*, 218 Cal. 412, at page 419 [23 Pac. (2d) 279], the Supreme Court said:

''It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner *for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant.* The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected *by the performance of the work. . . .* Upon both principle and authority, it

is clear that an independent contractor, who *by his own negligence* creates dangerous conditions *during the progress of the work,* should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damage directly attributable to the failure to perform this duty.'' (Italics added.)

■ The proof contained in the record before us shows that appellant and the other workmen employed by the Bethlehem Steel Company had both notice and knowledge of the so-called dangerous condition. The true foundation for *prima facie* liability of a general contractor to an employee of an independent contractor is founded upon some *wrongful* act committed by the general contractor or his servants after the latter has arrived upon the premises and during the actual progress of the work to be done by the general contractor. If any dangerous condition existed in or about the premises, it was not brought about by the general contractor, respondent McKittrick, but was created when the independent contractor, Bethlehem Steel Company, brought the crane or ''whirly'' upon the premises, placed it in a position of proximity to the high voltage wires, and then, through one of its employees, a fellow servant of appellant, caused the boom to be raised into the air over forty-five feet into close proximity to the electric wires, thereby grounding an electric current, with resultant injury to appellant.

■ Appellant next assigns as error the action of the trial court in excluding from evidence certain safety orders promulgated by the Industrial Accident Commission, appellant taking the position that the case comes within the general rule ''that a violation of a statute or of a county or municipal ordinance, which directly causes injury to another, constitutes negligence as a matter of law''. (19 Cal. Jur. 632, sec. 65.) In this connection, appellant relies upon a violation of ''Order 7-5050, Electrical Safety Orders, Industrial Accident Commission of the State of California'', reading in part as follows: ''No person, firm or corporation, or agent of same shall require or permit any employee to perform any function in proximity to high voltage lines.'' Assuming, without deciding, the right of the Industrial Accident Commission to regulate the conduct of employers and to prescribe regulations such as the one here referred to, no prejudicial error can be predicated upon the action of the trial court in the instant

case; because the evidence in question was offered only as against respondent McKittrick Company, and the latter was not the employer of appellant, nor was McKittrick Company an agent of appellant's employer. Obviously, only appellant's employer, Bethlehem Steel Company, could require or permit him to perform any function in proximity to high voltage wires. The evidence was properly excluded as to respondent McKittrick Company.

The record in this case demonstrates that the negligence of appellant's employer, Bethlehem Steel Company, was the sole proximate cause of this unfortunate accident. It follows that the nonsuit was properly granted as to all respondents.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 7, 1939, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 7, 1939. Curtis, J., voted for a hearing.