[No. A054282. First Dist., Div. Three. May 27, 1992.]

SAM KRONGOS, a Minor, etc., et al., Plaintiffs and Appellants, v. PACIFIC GAS & ELECTRIC COMPANY et al., Defendants and Respondents.

## COUNSEL

Philip M. Arnot for Plaintiffs and Appellants.

Peters, Fuller, Rush, Schooling & Farnsworth, David R. Fuller, Mathews & Kluck and Laurence A. Kluck for Defendants and Respondents.

## OPINION

**WHITE, P. J.**—On December 7, 1988, Pete Sam Krongos was electrocuted while working in a construction yard when a cable he was holding touched an overhead high voltage line. His widow and children filed suit against Dana L. Whitaker (the lessor of the construction yard) and against Pacific Gas & Electric Company (PG&E). The complaint alleged that the defendants had negligently strung the high voltage wires. The trial court granted defendants' separate motions for summary judgment on the ground that neither defendant owed a duty of due care to the decedent. Plaintiffs have appealed from the summary judgments. We reverse the summary judgment in favor of Whitaker and affirm the summary judgment in favor of PG&E.

### I

### FACTS

Viewing the evidence in the light most favorable to plaintiffs, the record discloses the following facts:[1]

At the time of the accident, Pete Sam Krongos was working for J. D. Griggs Construction. Griggs Construction had a contract with the State of

---

[1]Summary judgment is proper only if there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c.) In reviewing a summary judgment, we determine only whether the facts shown by the parties give rise to a triable issue of material fact. In making this determination the moving party's papers are strictly construed, while those of the opposing party are liberally construed. (*Howell* v. *State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1448 [267 Cal.Rptr. 708]; *Safeco Ins. Co.* v. *Gibson* (1989) 211 Cal.App.3d 176, 179-180 [259 Cal.Rptr. 206].) The

California to build a highway bridge north of the town of Orick in Humboldt County. In connection with that project, Griggs leased a "job yard" in Orick from defendant Whitaker to store materials and equipment.

On December 7, 1988, Krongos and another Griggs Construction employee, Clinton Morrow, were working in the job yard stacking timber. Morrow was operating a boom truck, and Krongos was assisting him by attaching the boom cable to bundles of timber. As Morrow was maneuvering the boom, the sun got in his eyes, which caused him to swing the boom into an overhead 12,000-volt power line. Unfortunately, Krongos was holding the boom cable at that very moment. The cable conducted the electricity into Krongos's body, causing his death by electrocution.

PG&E has continuously maintained the power line on the leased property since the early 1950's. The power line was clearly visible, was suspended 28 feet 11 inches above the point where Krongos and Morrow were working, and was constructed and maintained in accordance with California Public Utility Commission standards. PG&E owned the power line and was solely responsible for its maintenance. PG&E had erected the power lines approximately 34 years before Whitaker purchased the subject property.

Because the workers' compensation law barred suit against Griggs Construction, plaintiffs brought suit against Whitaker and PG&E for wrongful death. The complaint alleged that "Pacific Gas & Electric Company and Whitaker, negligently strung [the] high voltage wires in such a manner so that they were constructed in an insufficient height from the ground . . . and Defendants negligently failed to insulate said wires so as to prevent the escape of the current therefrom . . . ."

Both defendants brought motions for summary judgment, which the court granted. With respect to PG&E, the court found no triable issue of fact "to establish reasonable foreseeability and there is no duty of care owed by Pacific Gas and Electric to decedent Krongos . . . ." The court made identical findings with respect to Whitaker.

Plaintiffs have appealed from the summary judgments in favor of PG&E and Whitaker.

trial court's ruling on a motion for summary judgment is one of law based upon the papers submitted; consequently, the reviewing court must make its own independent determination whether the conflicting affidavits raise a triable issue of material fact. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1224-1225 [261 Cal.Rptr. 185].)

## II

### DISCUSSION

#### A. *The Cause of Action Against Whitaker.*

Plaintiffs first contend that the trial court erred when it granted summary judgment in favor of Whitaker. ██ Plaintiffs argue that Whitaker, as a landlord, owed a general duty of due care to persons coming·on his land to protect them from the hazard presented by the high voltage lines. Although we think it unlikely a jury will find that Whitaker *breached* this duty of due care, we nevertheless conclude that such a duty does exist. Consequently, we reverse the summary judgment in favor of Whitaker.

Under the common law, a landowner's duty of due care to a person coming onto his land turned on whether the person was classified as a trespasser, licensee or invitee. In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496] our Supreme Court repudiated this classification system and substituted the basic approach of foreseeability of injury to others. (*Id.*, at pp. 113-114, 119; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 895, p. 265.) ██ The court held that the "proper test to be applied to the liability of the possessor of land . . . is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, . . ." (*Rowland, supra,* 69 Cal.2d at p. 119.)

Although the defendant in *Rowland* v. *Christian* was an occupier of land, the general duty of care established in that case has been extended to lessors who are not in possession of the leased premises. (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454, 467 [213 Cal.Rptr. 213, 698 P.2d 116]; *Mora* v. *Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771, 781 [258 Cal.Rptr. 669]; *Wylie* v. *Gresch* (1987) 191 Cal.App.3d 412, 418 [236 Cal.Rptr. 552].) "As the owner of property, a lessor out of possession must exercise due care and must act reasonably toward the tenant as well as to[ward] unknown third persons." (*Mora, supra,* 210 Cal.App.3d at p. 781.) Thus, in a general sense, Whitaker *did* have a duty to exercise due care to protect third persons—such as Krongos—who came onto the leased premises.

██ However, that does not answer the specific question before us: namely, did Whitaker have a duty to protect third persons against the obvious danger of operating a boom truck near high voltage lines? ██ Whether a "duty" exists in a particular case is a question of law. "Duty" is merely a conclusory expression used when the sum total of policy

considerations lead a court to say that the particular plaintiff is entitled to protection. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 307 [191 Cal.Rptr. 704].)

█ Generally, if a danger is so obvious that a person could reasonably be expected to see it, the condition itself serves as a warning, and the landowner is under no further duty to remedy or warn of the condition. (6 Witkin, *supra*, Torts § 930, p. 301.) However, this is not true in all cases. "[I]t is foreseeable that even an obvious danger may cause injury, if the practical necessity of encountering the danger, when weighed against the apparent risk involved, is such that under the circumstances, a person might choose to encounter the danger. The foreseeability of injury, in turn, when considered along with various other policy considerations such as the extent of the burden to the defendant and consequences to the community of imposing a duty to remedy such danger [citation] may lead to the *legal* conclusion that the defendant" owed a duty of due care to the person injured. (*Osborn* v. *Mission Ready Mix* (1990) 224 Cal.App.3d 104, 121 [273 Cal.Rptr. 457], italics added.)

As indicated, plaintiffs' original theory of liability against Whitaker (as stated in the complaint) was that Whitaker negligently strung the high voltage wires and negligently failed to insulate those wires. However, in light of the undisputed fact that PG&E had constructed the lines and had sole responsibility to maintain them, plaintiffs abandoned this theory of liability in their opposition to the motion for summary judgment.

█ Instead, plaintiffs argued in their opposition that Whitaker should have taken steps to prevent the injury because he knew that the high voltage lines ran across his property and also knew that the boom truck was being stored and operated on the property.[2] Consequently, plaintiffs contend that, viewing the evidence in the light most favorable to plaintiffs, Whitaker

---

[2]It is clear Whitaker was aware of the high voltage lines on his property. It is less clear that Whitaker knew a boom truck was being operated there. However, we believe there is a triable issue of fact on this point. First, Griggs Construction apparently anticipated using the boom truck on the premises at the time it leased the job yard. Second, Whitaker drove by the property twice a day going to and from work and had an unobstructed view of the equipment stored and used on the property. Third, the boom truck was stored in the job yard, and was taken back and forth to the bridge construction site. Fourth, Whitaker knew Griggs was going to be storing heavy equipment at the job yard and "suppose[d]" they would be using some type of crane in the construction of the bridge. From this evidence, a fact finder could infer that Whitaker in fact knew a boom truck was being stored and used on the leased property. We do not mean to imply by this that, if Whitaker was aware of the use of the boom truck, as a

should have reasonably foreseen that the boom might come into contact with the high voltage lines while the truck was being operated on the premises.

The most important policy consideration in determining whether a duty exists is the foreseeability of the harm. Viewing the evidence in the light most favorable to plaintiffs, as we must, we believe the harm—electrocution caused by the boom coming into contact with overhead power lines—*was* reasonably foreseeable by Whitaker. In our view, the practical necessity of encountering the danger (i.e., the necessity of using the boom truck to move materials), when weighed against the apparent risk involved (electrocution by contact with electrical wires), is such that under the circumstances, a person might (and in fact did) choose to encounter the danger. (*Osborn* v. *Mission Ready Mix, supra,* 224 Cal.App.3d at p. 121.)

We stress, however, that we find the injury "foreseeable" only as it pertains to a *general* duty of care. ▉ "[A] court's task—in determining 'duty'—is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." (*Ballard* v. *Uribe* (1986) 41 Cal.3d 564, 572-573, fn. 6 [224 Cal.Rptr. 664, 715 P.2d 624]; *Gray* v. *America West Airlines, Inc.* (1989) 209 Cal.App.3d 76, 82 [256 Cal.Rptr. 877].)[3] Thus, the fact finder is still free to find that the *particular* plaintiff's injury (i.e., Krongos's electrocution) was *not* foreseeable in light of this *particular* defendant's conduct.

▉ In addition to foreseeability, a court should consider the following factors in determining whether a duty of due care exists: (1) the degree of certainty that the plaintiff suffered injury; (2) the proximity between the defendant's conduct and the injury suffered; (3) the moral blame attached to the defendant's conduct; (4) the policy of preventing future harm; (5) the

matter of law he was *required* to take steps to prevent injury. Rather, the fact that Whitaker knew the boom truck was being operated on the property—if true—is merely one element to be weighed by the jury in determining if Whitaker breached his duty of due care.

[3]The parties dispute whether the issue of foreseeability in this context is a question of law for the court or an issue of fact for the jury. Plaintiffs contend the issue is one of fact, while respondents maintain the question of foreseeability as it relates to legal duty is an issue of law. We believe respondents' position is correct: "[I]t is often misleadingly stated that although duty is a question of law, foreseeability is a question of fact which must be decided by the trier of fact . . . . To the contrary, where it is one factor to which a court looks in defining the boundaries of 'duty', foreseeability of the particular kind of harm is strictly a question of law . . . ." (*Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 507, fn. 6 [238 Cal.Rptr. 436]; see also *Yamaha Motor Corp.* v. *Paseman* (1990) 219 Cal.App.3d 958, 964 [268 Cal.Rptr. 514].)

extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (6) the availability of insurance for the risk involved. (*Rowland* v. *Christian, supra,* 69 Cal.2d at p. 113; *Johnson* v. *County of Los Angeles, supra,* 143 Cal.App.3d at p. 308, fn. 5.)

Here, the considerations numbered (1), (4), (5) and (6) militate in favor of imposing a duty in this case. The plaintiff clearly suffered injury; there is a strong policy of preventing future harm such as that which occurred here; the defendant could have easily discharged his burden by refusing to rent the land for the purpose for which it was used,[4] or by specifically prohibiting the use of boom trucks or cranes on the premises; and the risk here is likely covered by a standard landlord's liability policy. In short, the sum total of policy considerations lead us to say that Whitaker, as a landlord, had a general duty to use due care to protect people coming on to his land from the obvious electrocution hazard on the property. (*Johnson* v. *County of Los Angeles, supra,* 143 Cal.App.3d at p. 307.) Whether or not Whitaker *breached* that duty with respect to Krongos is an issue of fact which should be left to the fact finder to decide.

Consequently, we reverse the summary judgment in favor of Whitaker.

B.  *The Cause of Action Against PG&E.*

Although we conclude the summary judgment as to Whitaker must be reversed, we reach a different conclusion with respect to the summary judgment in favor of PG&E. However, our reasons for upholding the summary judgment are different than those expressed by the trial court.

The trial court concluded that PG&E owed no "duty of due care" to Krongos. We disagree with this conclusion. Instead, on the undisputed facts we find that PG&E did not *breach* its duty of due care to Krongos *as a matter of law.*[5]

PG&E cites a long line of cases involving facts similar to those before us. That is, in each case the plaintiff was injured by coming into contact with a high voltage line that was properly maintained and built according to Public Utility Commission regulations and good engineering practices. In each case, the defendant utility was found *not* liable as a matter of law. PG&E contends that those cases stand for the proposition that the utility owed no

---

[4] The defendant leased the premises for only $30 per month. Thus, he would not have suffered great economic hardship had he refused to lease the premises for a purpose which foreseeably presented a danger to third persons.

[5] To establish a cause of action for negligence, the plaintiff must establish (1) a legal duty to use due care, (2) a breach of that legal duty, and (3) the breach as the proximate or legal cause of the resulting injury. (6 Witkin, *supra,* Torts, § 732, p. 60.)

duty of due care to the injured plaintiff. We disagree. In our view, those cases, properly interpreted, indicate that although the utility did owe a duty of due care, as a matter of law the utility did not *breach* that duty.

Thus, in *Perrine v. Pacific Gas & Elec. Co.* (1960) 186 Cal.App.2d 442 [9 Cal.Rptr. 45] the plaintiff was helping to construct a warehouse in Oakland. While he was moving a 30-foot steel reinforcing rod, plaintiff contacted a 12,000-volt electrical line, which was situated 7 feet 4 inches from the building. The line complied with Public Utilities Commission requirements and met the requirements of good engineering practices. Prior to the accident, the owner of the warehouse had informed PG&E about the construction and the parties had negotiated about repositioning the electrical lines. (*Id.*, at pp. 444-446.)

The case went to the jury, but the jury was unable to reach a verdict. The court then granted a defense motion for directed verdict. (*Perrine v. Pacific Gas & Elec. Co.*, *supra*, 186 Cal.App.2d at p. 446.) On appeal, the court affirmed. The court stated: "PG&E as an electric company using highly charged wires owed a duty to anyone who, in the exercise of a lawful occupation in a place where he had a legal right to be, was likely to come into contact with deadly wires. . . . [¶] [However,] [e]ven one who maintains so dangerous an instrumentality as a high power line need not anticipate at his peril every possible fortuitous circumstance under which someone may make contact with the wires causing injury; *care, commensurate with and proportionate to reasonably foreseeable consequences, not insurance against every possible accident, is the measure of liability*. In the present case the wires were plainly visible, at the legally prescribed distance, and marked with warning signs which were visible though not seen. The record shows that appellant contacted the wire so erected and maintained with the rod which extended about 15 feet out from where he was working and 10 feet from the edge of the building and in our opinion [this] clearly indicates that this type of accident was not reasonably foreseeable." (*Id.*, at pp. 448-449, italics added, citations omitted.)

Thus, the *Perrine* court appeared to conclude that although PG&E had a duty to exercise due care toward the plaintiff, it did not breach that duty. PG&E was required only to take measures to protect against "reasonably foreseeable" accidents, not all possible accidents.

Similarly, in *Pascoe v. Southern Cal. Edison Co.* (1951) 102 Cal.App.2d 254 [227 P.2d 555], plaintiff sought damages for the wrongful death of her husband, a construction worker on a highway project, who was electrocuted when he set off a box of dynamite which blasted the fuse wire up into overhead high voltage lines. Defendant Southern California Edison had prior notice of the construction—and specifically of blasting—underneath its lines. (*Id.*, at p. 256.)

The defendant successfully demurred, and the Court of Appeal affirmed. The court stated: "The defendant here was under a duty to maintain its highly charged high tension wires as they crossed the state highway at a height that would not endanger the normal use of the highway for travel or other proper purposes. The defendant was bound to anticipate such normal use and thus place its wires at a height that would be regarded as reasonably safe. Under the circumstances here narrated it was not obligated to insulate its wires if they were placed at a distance above the highway, where the current in the wires would not interfere . . . with the normal and proper uses of the highway . . . that reasonably could be anticipated. . . . Maintaining a highly charged wire uninsulated at a point where it could be touched by a hand reaching out to it from an upstairs window is negligence; not so what the defendant did here." (*Pascoe* v. *Southern Cal. Edison Co., supra,* 102 Cal.App.2d at p. 257.)

Finally, in *Hayden* v. *Paramount Productions, Inc.* (1939) 33 Cal.App.2d 287 [91 P.2d 231], plaintiff, a steel worker, was injured when the boom of a crane which was hoisting steel columns contacted a 33,000-volt electric line operated by a municipal utility. The line was suspended 45 feet above the ground. The utility had prior notice of the construction work, which had begun five months before the accident. One wall of the proposed building was only inches from one of the conductors. The trial court nevertheless granted nonsuit at the close of plaintiff's case. (*Id.,* at pp. 289-291.) The Court of Appeal stated: "Manifestly, the city could not reasonably be expected to anticipate that any one would project a boom . . . working near its right of way, to an elevation of more than forty-five feet and contact an electric wire, thereby causing the current to ground, when, as here, the operator of the [crane] knew of the presence of the wires and was apprised of their dangerous voltage through appropriate signs attached to the . . . poles." (*Id.,* at p. 292.)

We believe the present case is controlled by *Perrine, Pascoe* and *Hayden.* Here, PG&E had constructed and maintained its power line in a manner that rendered it safe under all ordinary circumstances. The line was constructed in accordance with California Public Utilities Commission General Order 95, which required a minimum ground clearance of at least 25 feet. In fact, the line was nearly 29 feet above the ground at the point where it was contacted. Moreover, the line was also properly equipped with high voltage warning signs. Finally, unlike the utilities in *Perrine, Pascoe* and *Hayden,* PG&E did *not* have express notice that construction-related activity would take place at the jobsite. If the utilities in those cases were found not to be negligent even though they knew of the construction activity, how then can PG&E be held liable when it was never informed that construction-related activity would occur near its line?

In short, we conclude that as a matter of law the undisputed facts establish that PG&E did not violate its duty of due care to Krongos.

Nevertheless, plaintiffs contend there is a triable issue of fact as to breach in this case because there is evidence the power lines "trespassed" onto Whitaker's land. Plaintiffs base this conclusion on evidence there was no *easement of record* for PG&E's high voltage lines and that the lines did, in fact, encroach upon Whitaker's property some seven to twelve feet. However, PG&E could have obtained a right to be on the land through an oral license, or a prescriptive easement. (See *Colvin* v. *Southern Cal. Edison Co.* (1987) 194 Cal.App.3d 1306, 1312 [240 Cal.Rptr. 142].) More fundamentally, however, even if we assume the lines did "trespass" upon Whitaker's property, we do not see how that fact transformed PG&E's reasonable and proper construction and maintenance of the power lines into a negligent act. The trespass—if such occurred—does not alter the fact that the lines were clearly visible, properly constructed to code, and properly marked with warning signs. The alleged trespass, although perhaps a "but for" cause of the injury, does not bear on whether PG&E breached its duty of due care *to Krongos*. (See *McKenzie* v. *Pacific Gas & Elec. Co.* (1962) 200 Cal.App.2d 731, 737 [19 Cal.Rptr. 628], disapproved on another point in *Di Mare* v. *Cresci* (1962) 58 Cal.2d 292, 299 [23 Cal.Rptr. 772, 373 P.2d 860] [fact that power lines trespassed on private property did not impose strict liability on utility].)

C. *Disposition.*

The summary judgment in favor of PG&E is affirmed. The summary judgment in favor of Whitaker is reversed. Plaintiffs' costs on appeal are to be paid by Whitaker.

Merrill, J., and Werdegar, J., concurred.