[No. A063962. First Dist., Div. Three. Feb. 5, 1996.]

WYDA ASSOCIATES, Plaintiff and Appellant, v.
CARL J. MERNER, Defendant, Cross-defendant and Respondent;
LITTON/FULLER GROUP OF WALNUT CREEK, Cross-complainant
and Appellant.

### COUNSEL

Sheldon & Mankin, Peter A. Mankin, Malcolm A. King and Gary S. Garfinkle for Plaintiff and Appellant and for Cross-complainant and Appellant.

Miller, Starr & Regalia, Scott A. Sommer and Tobin & Tobin for Defendant, Cross-defendant and Respondent.

### OPINION

**CORRIGAN, J.**—The essence of this litigation revolves around when a contractual period to obtain financing for the purchase of real estate elapsed. Property owner, WYDA Associates (WYDA), and real estate brokerage, Litton/Fuller Group of Walnut Creek (Litton/Fuller), appeal from the grant of summary judgment in favor of buyer, Carl J. Merner, in a breach of contract action. We hold the trial court incorrectly interpreted the terms of the purchase agreement. Thus, we reverse and remand for further proceedings.

*Statement of Facts*

On May 23, 1991, Merner offered to purchase real property from WYDA for $2.9 million.[1] That offer was, however, contingent upon Merner's inspection of the property and review of various documents pertaining to the property (the inspection contingencies)[2] and his ability to obtain financing

---

[1] The property was described as three buildings containing approximately two hundred living units, ancillary buildings, improvements, and grounds.

[2] Paragraph No. 5 of addendum No. 1 to the agreement reads in relevant part: "INSPECTION CONTINGENCIES: Buyer's offer is contingent upon the review and approval of items A, B, C, D listed below:

"A. Physical inspection of the Property, including all improvements thereon.

"B. All current rental agreements, service contracts and all other current written contracts or agreements which affect the Property.

"C. The current rent roll for the Property, and for the last 12 months prior to the month of the Seller's acceptance hereof, all monthly operating records of the Seller relating to the Seller's expenditures in connection with the Property. Such records, to the extent maintained by the Seller, shall include, but are not limited to, receipts, books of account, monthly summaries, etc.

"D. All notes and security instruments encumbering the Property."

within certain specifications (the financing contingency).[3] According to the agreement, on the date the inspection contingencies were removed, two events were to occur: Merner was to deposit $60,000 in escrow and was then to be given sixty days to obtain financing.

Merner had 10 business days from his receipt of the specified documents on May 31 to complete his review and remove the inspection contingencies. However, on June 14 (the 10th business day), Merner asked for a 3-week extension to further consider the purchase of the property.

Initially, Litton/Fuller prepared an agreement, which was signed by Merner on June 14, extending the time to remove the inspection contingencies until July 5. Litton/Fuller, believing WYDA would not agree to keep the property off the market for an additional three weeks without consideration, did not present WYDA with this agreement. Instead, they prepared a "Conditional Removal of the Inspection Contingencies and Option to Purchase" (the option), whereby Merner paid WYDA $1,000 in exchange for an option to purchase the property by July 5, under the same terms as the original agreement. The parties executed the option on June 21. Merner exercised that option on July 5 and deposited $60,000 into escrow.

On July 16, Merner signed a preliminary application for financing, which was then sent to American Savings Bank (American Savings).[4] On July 31, American Savings responded with a letter of interest, asking Merner to complete further documents and send a loan application fee within 10 days. Merner was aware that processing of the application would take approximately 60 days, as indicated on the application fee agreement he signed. On August 1, the parties executed a special addendum, extending the financing period from 60 to 90 days. However, that document did not indicate the date from which the financing period was running. On August 6, Merner sent American Savings the completed application and fee.[5]

On or about September 10, Merner was notified by American Savings that the property contained asbestos throughout the ceilings of all buildings. As a result, American Savings sent Merner various "environmental loan documents" that would have to be executed if the loan was eventually approved.

---

[3]These specifications included a principal sum of $1.7 million, financed at no more than 11.5 percent annually and an origination fee of no more than 2.5 points.

[4]Merner also submitted an application to Luther Burbank Savings. The record reflects only that this application was submitted after July 5. There is no information in the record as to its fate.

[5]Merner contends the 60-day processing period began with the submission of the initial application on July 16. This contention is contrary to the plain language of the application fee agreement which indicates that American Savings required 60 days for processing from "receipt of a fully completed loan application package."

On September 19, Merner called American Savings and inquired about stopping the loan process. On September 23, Merner informed the title company he believed the 90-day financing contingency had expired and that the purchase agreement was null and void.[6]

On October 2, 1991, American Savings approved the loan.[7] Merner, however, refused to proceed.

### Procedural History

On May 8, 1992, WYDA sued Merner for breach of contract for "refusing to accept financing which was approved in accordance with the terms and conditions of the Agreement, and which was otherwise available to him to complete the sale . . . ." Merner cross-complained against WYDA and Litton/Fuller, the brokerage that represented both parties to the contract.[8] Litton/Fuller cross-complained against Merner, alleging causes of action substantially the same as those alleged by WYDA.[9] Merner moved for summary judgment against both WYDA and Litton/Fuller (hereafter appellants).

It is important to set forth the specific contentions of the summary judgment motion in order to clarify the procedural posture of the case as it stands before us. The basis of Merner's motion was that the financing contingency period expired on September 19; thus, no contract existed when he informed appellants he was no longer interested in the property. Appellants countered by alleging the contingency period did not expire until October 3. They also contended that, even if the contingency period expired on September 19: (1) Merner had no right to invoke the 90-day contingency period because it was solely for the benefit of the seller; (2) Merner had prematurely breached the contract by attempting to withdraw on September 19; and (3) Merner had breached the implied covenant of good faith by failing to diligently pursue financing. Merner countered by alleging that, even if the contingency period expired on October 3, the loan was not approved by that time. Appellants did not move for summary judgment or summary adjudication of any issues.

---

[6]Evidence was contradictory as to whether Merner informed American Savings that he wanted to stop the loan process in the phone conversation of September 19 or in the letter of September 23 to the title company. Merner now contends he informed the bank on September 19, but his own deposition says he did not do so until September 23. We agree with the trial court that this disputed fact was not material.

[7]Merner argues that the American Savings approval was not valid, given the various conditions placed upon that approval because of the hazardous material discovery. We do not resolve this question. (See part D. of Discussion, *post.*)

[8]Essentially, Merner's cross-complaint alleged appellants had concealed information regarding the presence of asbestos on the property.

[9]*Litton/Fuller alleged breach of implied promise in addition to breach of contract.*

Summary judgment was granted on April 19, 1993. After appellants' motion to reconsider, the trial court again granted summary judgment on September 24, 1993. The court found the option was unambiguous and that the contingency period began running on June 21, thus ending on September 19. The court also found the financing period was for the benefit of the buyer; thus, Merner had the right to invoke the expiration of the period in order to withdraw from the contract. Next, the court found there was no triable issue of material fact as to Merner's diligence in obtaining financing or as to Merner's alleged anticipatory breach. The court did not reach the question of whether the loan was, in fact, approved before October 3.

Judgment was entered in favor of Merner, and the escrow funds were released to him. The parties stipulated that Merner's cross-complaint would be dismissed without prejudice.

## *Discussion*

### A. *Standards of Review*

■ "On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) Because the trial court's determination is one of law based upon the moving papers, the reviewing court must make its own determination and, in doing so, must strictly construe the papers of the moving party and liberally construe those of the opponent. (*Krongos* v. *Pacific Gas & Electric Co.* (1992) 7 Cal.App.4th 387, 390, fn. 1 [9 Cal.Rptr.2d 124].) We do so mindful that " '[s]ummary judgment is a drastic measure which should be used with caution so that it does not become a substitute for trial.' " (*Marketing West, Inc.* v. *Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 610 [7 Cal.Rptr.2d 859].)

When considering a question of contractual interpretation, we apply the following rules. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Civ. Code, § 1636.) "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.) "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . ." (Civ. Code, § 1639.)

■ Parol or extrinsic evidence is admissible to resolve an ambiguity. (*Garcia* v. *Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435 [204 Cal.Rptr. 435, 682 P.2d 1100]; *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; Code Civ. Proc., § 1856, subd. (g).) In such cases, the court engages in a two-step process: "First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step— interpreting the contract. [Citation.]" (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) ■ The trial court's determination of whether an ambiguity exists is a question of law, subject to independent review on appeal. (*Ibid.*) The trial court's resolution of an ambiguity is also a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. (*Id.* at p. 1166.) Furthermore, "[w]hen two equally plausible interpretations of the language of a contract may be made . . . parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact which precludes summary judgment if the evidence is contradictory." (*Walter E. Heller Western, Inc.* v. *Tecrim Corp.* (1987) 196 Cal.App.3d 149, 158 [241 Cal.Rptr. 677].)

## B. *The Financing Period*

■ Merner contended the 60-day financing period (later extended to 90 days) began to run on June 21, the day the option was executed. WYDA, on the other hand, contended the financing period began to run on July 5, the day the option was exercised. The trial court, in agreement with Merner, found that the terms of the option were unambiguous and that no material question of fact had been raised as to its meaning. Consequently, the court found that the financing period commenced on June 21, rather than July 5, and ended on September 19, rather than October 3.

A determination of when the financing period ended turns on the question of when the inspection contingencies were removed, that being the triggering event for the running of the financing period. In support of his contention, Merner claims the conditions were removed by the very execution of the option because that document reads: ". . . [T]he Buyer hereby removes the inspection contingencies to the purchase of the property . . . ." However, as

WYDA notes, the document is entitled a "Conditional Removal" and includes a provision that the contingencies are removed "subject to" several conditions, which include the exercise of the option by July 5.[10]

The trial court's finding that the agreement is unambiguous is a legal determination subject to de novo review. (*Winet* v. *Price, supra,* 4 Cal.App.4th at p. 1166.) We conclude that the agreement is ambiguous as to when the financing period was to begin running.

Merner requested the three-week extension, ultimately embodied in the option, in order "to consider my potential purchase" of the property and to keep the property off the market in the interim. The terms of the superseded extension agreement, which would have allowed Merner an additional three weeks to remove the inspection contingencies, suggest that the option also was meant to extend the time for removal of the inspection contingencies to July 5 and that the $1,000 was consideration for that extension. The trial court placed little or no weight on these factors, finding they raised no issue of material fact.[11] We cannot agree. If the purpose of the three-week extension was to consider the purchase, it would make little sense for Merner to bind himself under the agreement by removing the inspection contingencies before the extension had even begun.

Merner's own deposition on this point is somewhat confusing. He claims on one hand that he was bound by the execution of the option and that "the clock was running" as of June 21. Yet, he conceded that if he thereafter backed out, he would lose only the money he put up for the option.

[10]The relevant portion of the option reads: "These above contingencies are removed subject to the following:

"1. The Purchase Agreement & Deposit Receipt is hereby modified into a three week Option to Purchase.

"2. In consideration for this Option to Purchase the Buyer shall herewith deposit with Seller $1,000.

"3. The terms of the Option to Purchase shall be the same as all terms in the Purchase Agreement & Deposit Receipt dated May 23, 1991[.]

"4. If the Buyer intends to exercise this Option to Purchase Buyer will notify Seller in writing prior to 5:00 p.m. on Friday, July 5, 1991. Such notification shall constitute a full and complete ratification of the Purchase Agreement with escrow monies to be delivered to escrowholder as per the Purchase Agreement.

"5. Buyer's failure to exercise this Option in writing shall relieve Seller of any and all obligations to sell and convey said property to Buyer.

"6. Should Buyer exercise this Option to Purchase on or before July 5, 1991 the $1,000 option money shall be applied toward the purchase price and down payment of the property."

[11]Appellants offered evidence regarding the preparation of the extension agreement and the reason for the requested three-week extension. Merner objected to only a small portion of that evidence which contained speculation that Merner believed the contingency period began on July 5. The trial court sustained that objection. Although the court's ruling did not exclude the evidence of the extension agreement and the reason for the extension, the court found the extension agreement was irrelevant to its decision.

Additionally, Merner did not deposit the $60,000 to escrow until July 5, an event that was to occur upon removal of the inspection contingencies. The trial court disregarded this fact in an apparent misreading of the August 1 addendum: ". . . [A] delay by MERNER on the $60,000 deposit in June does not overcome the parties [*sic*] use of plain language in the Special Addendum dated August 1, 1991 providing for the expiration of the financing contingency 90 days after June 21, 1991." The addendum, however, makes no mention of June 21, nor any other date as a reference point for the running of the contingency period.

Merner also made no effort, either personally or through Litton/Fuller, to obtain financing until after July 5 and did not sign the initial American Savings loan application until July 16. Appellants asserted Merner's apparent failure to pursue financing before July 5 as evidence of Merner's belief that the financing period did not begin running until that date. Merner disputed this fact but offered no evidence in support of his position. The court, however, considered this fact only on the issue of Merner's diligence in pursuing financing and did not view it as extrinsic evidence of the parties' belief as to when the financing contingency period began to run. Specifically, the court stated there was no evidence that Merner had not pursued financing in a timely manner, "especially when the thirty day extension under the Special Addendum was considered." The addendum, however, occurred well after July 5 and, as written, does not shed light on the parties' intentions regarding the running of the financing period. Merner's effort, or lack thereof, to obtain financing before July 5 was relevant as evidence that he did not believe the financing period was running until that date.

Finally, if the contingency period began on June 21, it would have ended on August 20, absent the 30-day extension. On August 1, when the parties agreed to the extension, Merner would have increased the time remaining to obtain financing from 19 to 49 days. Given that he did not submit the final application until August 6, Merner was down to 44 days to obtain financing, which he knew would take approximately 60 days. Conversely, if the contingency period began on July 5, absent the extension, it would have ended on September 3. Thus, the August 1 agreement extended the time remaining from 33 days to 63 days. Merner's August 6 submission of the application still left him 58 days to obtain financing.

In *Lawrence Block Co.* v. *Palston* (1954) 123 Cal.App.2d 300 [266 P.2d 856] (disapproved on other grounds in *Mattei* v. *Hopper* (1958) 51 Cal.2d 119, 126 [330 P.2d 625]), the court considered similar circumstances. There, Palston's agreement with a prospective buyer provided that acceptance of the buyer's offer was "subject to" Palston's obtaining a specified deed of

trust on the property. (123 Cal.App.2d at p. 303.) After Palston failed to obtain the specified deed of trust, she accepted an offer from a different buyer. (*Id.* at p. 304.) The brokerage for the original prospective buyer sued for loss of commission. In determining that acceptance of the original offer was, in fact, conditioned upon obtaining the deed of trust, the court looked to the conduct of the parties: "A construction given a contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will when reasonable be adopted and enforced by the court. [Citation.] The practical construction of a contract made by the parties thereto is the best evidence of what they intended. [Citations.] [¶] The conduct of the parties here, at the time of the making of the agreement and immediately thereafter, is consistent only with the construction that [Palston] did not unconditionally accept [the buyer's] offer to purchase." (*Id.* at p. 311.) The court noted that Palston made no effort before receiving the offer to obtain the deed of trust, that no escrow was opened after the offer was received, and that the brokerage tried to get a new offer from its client after Palston failed to obtain the deed of trust. (*Ibid.*) Similarly, in *Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 893 [222 Cal.Rptr. 455], the court determined the breadth of a contractual provision by looking to the context in which the contract was drafted and the conduct of the parties after execution.

After considering the language of the option in conjunction with the extrinsic evidence of the conduct of the parties, we conclude the option is ambiguous as to when the parties intended the financing period to begin. Because the parol evidence is contradictory, a factual question arises that should not be resolved on summary judgment. We agree with WYDA that the use of the phrase "subject to" ordinarily creates a condition precedent to the performance of some other act. (*Rubin* v. *Fuchs* (1969) 1 Cal.3d 50, 54 [81 Cal.Rptr. 373, 459 P.2d 925]; *Lawrence Block Co.* v. *Palston, supra*, 123 Cal.App.2d at p. 310.) The extrinsic evidence offered on this point tends to support appellants' position and not Merner's. That is, Merner's actions suggest he believed he had no obligations during the option period other than to decide whether to exercise the option. Specifically, he had no obligation to seek financing until he exercised the option. Of course, his deposition is to the contrary. We need not resolve this question. Our jurisdiction extends to determining the propriety of the grant of summary judgment in favor of Merner on the grounds articulated by the trial court. We hold the trial court was in error. As a matter of law, the terms of the option are ambiguous as to the commencement of the financing period. Upon consideration of the parties' pleadings, we also hold that a material dispute of fact exists as to the resolution of that ambiguity. We leave further resolution of this controversy to the trial court.

## C. *Benefit of the Financing Period*

 Merner alleges that the financing contingency contained in the purchase agreement was for his benefit. Thus, he argues, he did not breach the contract by opting out of the sale when there was no loan approval by the end of the contingency period. The trial court agreed. We do not.

Merner relies upon the proposition that financing contingency provisions are generally for the benefit of the buyer to ensure the buyer is not liable for breach of contract when he is unable to borrow the money to pay for the land. (*Doryon* v. *Salant* (1977) 75 Cal.App.3d 706, 711-713 [142 Cal.Rptr. 378]; *Wesley N. Taylor Co.* v. *Russell* (1961) 194 Cal.App.2d 816, 828 [15 Cal.Rptr. 357].) While generally true, that proposition has no application here where the terms of the contract specifically provide for the seller's right of rescission upon expiration of the financing period.

First, in the cases cited above, the sellers attempted to rescind contracts on the basis that the buyers were unable to obtain financing under the conditions specified in the contingencies. In each case, however, the buyer was willing to go forward with the purchase under financing terms less favorable than those specified in the contract. Again, in each case, the court found for the buyer on the principle that a contracting party may waive provisions intended for his benefit. (*Doryon* v. *Salant, supra,* 75 Cal.App.3d at pp. 711-713; *Wesley N. Taylor Co.* v. *Russell, supra,* 194 Cal.App.2d at pp. 828-829.) Here, while the basic financing contingency protects the buyer, the contingency *period* (i.e., the time allotted to obtain the financing) is specifically designed for the benefit of the seller alone. While the buyer should not be liable to buy property he cannot finance, the seller is not required to keep his property off the market indefinitely while the buyer looks for funding.

*City of Stockton* v. *Stockton Plaza Corp.* (1968) 261 Cal.App.2d 639 [68 Cal.Rptr. 266] is instructive. There, a private company contracted with the city to lease property and build improvements thereon. The lease contained a financing contingency by which the lessee was not required to build the improvements unless it could obtain the specified financing. However, under the contract, the lessee had the right to terminate the lease if it could not obtain the financing within one year. (*Id.* at pp. 641-642.) The court noted that the contingency period of one year was for the benefit of the lessee. (*Id.*

at p. 642.) However, relying on Civil Code section 1657,[12] the court held that the lessee must obtain financing within a "reasonable time." (*City of Stockton, supra,* at p. 646.) In doing so, the court rejected the lessee's contention it could keep the lease alive indefinitely as long as it continued to seek financing in good faith. (*Id.* at p. 642.)[13]

By analogy, WYDA had the right to rescind the contract if Merner could not obtain the specified financing within 90 days. Merner, of course, had the right to enforce the contract if he obtained financing within 90 days on terms less favorable than specified. Additionally, Merner was not required to seek specified financing indefinitely, but rather only for a reasonable time. In determining the contingency period was for the seller's benefit, we resolve a question of law pertaining to contractual interpretation. We express no opinion as to what was a reasonable period of time for Merner to seek the specified financing. That factual question, turning upon a variety of circumstances, was not before the trial court.

### D. *Loan Approval*

Merner contends, even if the contingency period expired on October 3, appellants have not raised a material issue of disputed fact because no loan approval was received by October 3. First, he notes that he personally did not receive notice of American Savings's willingness to extend the loan until October 4. The evidence demonstrates that Litton/Fuller, acting as broker for both parties, received notice of the approval by phone on October 2. We are not called upon to resolve this question because the court below did not do so.

Second, Merner claims American Savings's willingness to extend the loan does not constitute approval because of the new conditions resulting from the discovery of the hazardous material. He offers no authority for his position. Again, the evidence is undisputed that the basic loan terms offered by American Savings were in conformity with those in the financing contingency. The question remains whether the additional conditions regarding hazardous material so varied the loan as to negate approval. The trial court found this question irrelevant because of its determination that the contingency period expired on September 19. Again, given the procedural posture

[12]Civil Code section 1657 provides in part: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed."

[13]This contention included a concession by the lessee in that the terms of the contract did not include a condition of good faith efforts to obtain financing. Arguably, the terms of the contract allowed the lessee to keep the lease alive without even seeking financing. Such an argument was rejected by implication when the court implied a "reasonable time" as the financing contingency period from the seller's perspective.

of this case, we are not called upon to decide this question. The court below did not determine whether there was a dispute of material fact on this issue; therefore, there is no ruling for us to review.

■ We agree, however, with appellants that Merner's claim construes the financing contingency too narrowly. Merner's offer was not contingent upon his obtaining a loan but rather on his ability to obtain a loan. A buyer is not necessarily unable to obtain a loan merely because he does not have a legally enforceable loan contract. "Rather, the proof needed to show ability depends on all the surrounding circumstances." (*Henry* v. *Sharma* (1984) 154 Cal.App.3d 665, 672 [201 Cal.Rptr. 478].) In *Henry* v. *Sharma*, the court found the buyers had the particular financial ability because "they ' "commanded resources upon which [they] could obtain the requisite credit." ' . . ." (*Ibid.,* citations omitted.) Thus, we disagree with the trial court's determination that evidence of Merner's financial resources was immaterial and that Merner's other financial dealings did not relate to an issue of disputed fact. While Merner might argue that, despite his financial status, the presence of hazardous materials defeated his practical ability to obtain the necessary financing, we leave resolution of this question to the trial court where the parties can more fully present factual support.

## E. *Reasonable Diligence*

Appellants allege that Merner breached a covenant of reasonable diligence by delaying his efforts to obtain financing.[14] The original agreement contained the following provision: "Each party shall act diligently, reasonably, and in good faith in cooperating with the other to effect the satisfaction or removal of . . . the financing contingenc[y] . . . ." The trial court found no material disputed fact on this issue. We agree.

All Merner's efforts to obtain financing were at the direction of Litton/Fuller. These efforts included the application to American Savings and another to Luther Burbank Savings. Additionally, at Litton/Fuller's urging, Merner sought an extension of the financing period when it appeared he would not be able to secure the financing in time. There is no dispute as to what Merner's efforts to obtain financing were and that these efforts were guided by Litton/Fuller. We agree that no dispute of material fact was presented on this claim.

---

[14]While Merner contends this allegation was not made in the appellants' complaints, we must construe appellants' moving papers broadly (*Krongos* v. *Pacific Gas & Electric Co.,* *supra*, 7 Cal.App.4th at p. 390, fn. 1) and, so, find this breach within the ambit of the alleged causes of action.

## Disposition

The judgment is reversed and the matter remanded to the trial court for further proceedings. Each side is to bear its own costs.

Chin, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied February 29, 1996, and respondent's petition for review by the Supreme Court was denied May 22, 1996. Chin, J., did not participate therein.